## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**THE COMMONWEALTH OF**
**PENNSYLVANIA,** by and through Pennsylvania
Attorney General Kathleen G. Kane, the
Pennsylvania Insurance Department, the
Pennsylvania Department Of Environmental
Protection and the Pennsylvania Underground
Storage Tank Indemnification Fund,

        Plaintiff,

        v.

**EXXON MOBIL CORPORATION,** individually
and as f/k/a, d/b/a and/or successor in liability to
ExxonMobil Refining and Supply Company, Exxon
Chemical U.S.A., ExxonMobil Chemical
Corporation, ExxonMobil Chemical U.S.A., Exxon
Corporation, and Mobil Corporation;

**EXXONMOBIL OIL CORPORATION,**
individually and as f/k/a, d/b/a and/or successor in
liability to Mobil Oil Corporation;

**AMERICAN REFINING GROUP, INC.;**
**ATLANTIC RICHFIELD COMPANY,**
individually and as f/k/a, d/b/a and/or successor in
liability to Atlantic Richfield Delaware
Corporation, Atlantic Richfield Company (a
Pennsylvania corporation), ARCO Products
Company, ARCO Chemical Company, a division
of Atlantic Richfield Company, and ARCO
Chemical Company, a Delaware Corporation;

**BP AMERICA INC.;**
**BP AMOCO CHEMICAL COMPANY,**
Individually and as f/k/a, d/b/a and/or successor in
liability to Amoco Chemical Company, Amoco
Chemicals Company, and Amoco Chemicals
Corporation;

**BP PRODUCTS NORTH AMERICA, INC.,**
individually and as f/k/a, d/b/a and/or successor in
liability to BP Amoco Corporation, Amoco
Corporation, Amoco Oil Company, BP Exploration
& Oil Inc., Sohio Oil Company, BP Oil Inc. and BP
Oil Company;

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

        CIVIL ACTION NO.

**BP WEST COAST PRODUCTS, LLC,**
individually and as f/k/a, d/b/a and/or successor in
liability to Atlantic Richfield Company, Atlantic
Richfield Company (a Pennsylvania corporation),
and ARCO Products Company;

**CHEMTURA CORPORATION,** individually and
as f/k/a, d/b/a and/or successor in liability to Witco
Corporation;

**CHEVRON U.S.A., INC.,** individually and as
f/k/a, d/b/a and/or successor in liability to Gulf Oil
Corporation, Gulf Oil Corporation of Pennsylvania,
Chevron Products Company and Chevron Chemical
Company;

**CITGO PETROLEUM CORPORATION;**
**CITGO REFINING AND CHEMICALS**
**COMPANY, LP;**
**COASTAL EAGLE POINT OIL COMPANY;**
**CONOCOPHILLIPS COMPANY,**
Individually and as f/k/a, d/b/a and/or successor in
liability to Phillips Petroleum Company, Conoco,
Inc., Tosco Corporation, and Tosco Refining Co.;

**CROWN CENTRAL LLC,** individually and as
f/k/a, d/b/a and/or successor in liability to Crown
Central Petroleum Corporation;

**CUMBERLAND FARMS, INC.;**
**DUKE ENERGY MERCHANTS, LLC;**
**EL PASO MERCHANT ENERGY-**
**PETROLEUM COMPANY,**
Individually and as f/k/a, d/b/a and/or successor in
liability to Coastal Refining and Marketing, Inc.
and Coastal States Trading, Inc.;

**ENERGY MERCHANT, LLC;**
**EQUILON ENTERPRISES, LLC,**
Individually and as f/k/a, d/b/a and/or successor to
Shell Oil Products US, Shell Oil Products Company
LLC, Shell Oil Company, and Texaco Refining and
Marketing Inc.;

**GEORGE E. WARREN CORPORATION;**
**GETTY PETROLEUM MARKETING, INC.;**
**GETTY PROPERTIES CORPORATION;**
**GULF OIL LIMITED PARTNERSHIP;**
**HESS CORPORATION,** individually and as
f/k/a, d/b/a and/or successor in liability to Amerada
Hess Corporation;

2

**HOUSTON REFINING, LP**, individually and as f/k/a, d/b/a and/or successor in liability to Lyondell-Citgo Refining, LP;

**LUKOIL AMERICAS CORPORATION**, individually and as f/k/a, d/b/a and/or successor in liability to Getty Petroleum Marketing Inc.;

**LYONDELLBASELL INDUSTRIES N.V.**, individually and as f/k/a, d/b/a and/or successor in liability to Lyondell Chemical Company, Lyondell Chemical Worldwide, Inc., Arco Chemical Company and Arco Chemical Corporation;

**MARATHON OIL CORPORATION**, individually and as f/k/a, d/b/a and/or successor in liability to Marathon Oil Co., Marathon DE, Marathon PC, Marathon Petroleum Corporation, Marathon Holdings, and Marathon Pipeline;

**MARATHON PETROLEUM COMPANY LP**, individually and as f/k/a, d/b/a and/or successor in liability to Marathon Petroleum Company, LLC and Marathon Ashland Petroleum Company LLC;

**MARATHON PETROLEUM CORPORATION**, individually and as f/k/a, d/b/a and/or successor in liability to Marathon Oil Co., Marathon DE, Marathon PC, Marathon Petroleum, Marathon Holdings, and Marathon Pipeline;

**MOTIVA ENTERPRISES, LLC**, individually and as f/k/a, d/b/a and/or successor in liability to Shell Oil Products Company, LLC, Shell Oil Products Company, Star Enterprise, and Texaco Refining and Marketing, Inc. East (a/k/a TRMI East);

**NORTH ATLANTIC REFINING LTD.; NUSTART TERMINALS OPERATIONS PARTNERSHIP LP**, individually and as f/k/a, d/b/a and/or successor in liability to Support Terminals Operating Partnership, LP and ST Services, Inc.;

**PHILLIPS 66**, individually and as f/k/a, d/b/a and/or successor in liability to ConocoPhillips Company, Phillips Petroleum Company, Conoco, Inc., Tosco Corporation, and Tosco Refining Co.;

**PHILLIPS 66 COMPANY**, individually and as
f/k/a, d/b/a and/or successor in liability to
ConocoPhillips Company, Phillips Petroleum
Company, Conoco, Inc., Tosco Corporation, and
Tosco Refining Co.;

**PREMCOR REFINING GROUP, INC.;**
**PREMCOR USA, INC.;**
**SHELL OIL COMPANY**, individually and as
f/k/a, d/b/a and/or successor in liability to Deer
Park Refining LP, Shell Oil, Shell Oil Products,
Shell Chemical, Shell Trading US, Shell Energy
Services, Texaco Inc., The Pennzoil Company and
Pennzoil-Quaker State Company;

**SHELL OIL PRODUCTS COMPANY LLC**,
individually and as f/k/a, d/b/a and/or successor in
liability to Shell Oil Products Company;

**SUN COMPANY, INC.**, individually and as f/k/a,
d/b/a and/or successor in liability to Sunoco, Inc.,
Sun Oil Company (PA), and Sun Oil Company;

**SUNOCO, INCORPORATED (R&M)**,
individually and as f/k/a, d/b/a and/or successor in
liability to Sunoco, Inc. (R&M), Sun Company,
Inc. (R&M), Sun Refining and Marketing
Company, and Sun Oil Company of Pennsylvania;

**TEXACO INC**, individually and as f/k/a, d/b/a
and/or successor in liability to Texaco Refining and
Marketing, Inc.;

**TMR COMPANY**, individually and as f/k/a, d/b/a
and/or successor in liability to Texaco Refining and
Marketing, Inc. and TRME Company (f/k/a Texaco
Refining and Marketing (East), Inc.);

**TRMI-H LLC**, individually and as f/k/a, d/b/a
and/or successor in liability to TRMI Holdings Inc.,
Texaco Refining and Marketing Inc., Getty
Refining and Marketing Company, and Getty Oil
Company (Eastern Operations), Inc.;

**TOTAL PETROCHEMICALS AND**
**REFINING USA, INC.;**
**UNITED REFINING COMPANY;**
**VALERO ENERGY CORPORATION**,
Individually and as f/k/a, d/b/a and/or successor in
liability to Valero R&M;

4

**VALERO MARKETING AND SUPPLY
COMPANY;
VALERO REFINING AND MARKETING
COMPANY; VITOL S.A., INC.;
WESTERN REFINING YORKTOWN, INC.,**
individually and as f/k/a, d/b/a and/or successor in
liability to Giant Yorktown, Inc.,

<div align="center">Defendants.</div>

<div align="center"><u>**NOTICE OF REMOVAL**</u></div>

Defendants Exxon Mobil Corporation and ExxonMobil Oil Corporation ("Defendants"),

by their attorneys, and pursuant to Section 1503 of the Energy Policy Act of 2005, 28 U.S.C. §

1441 and 28 U.S.C. § 1446, hereby remove the action captioned as *The Commonwealth of*

*Pennsylvania v. Exxon Mobil Corporation, et al.*, Case No. 140602881, from the Court of

Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the

Eastern District of Pennsylvania.  The grounds for removal are as follows:

<div align="center">**PROCEDURAL MATTERS**</div>

1.       On June 19, 2014, Plaintiff Commonwealth of Pennsylvania ("Plaintiff") filed this

action in the Court of Common Pleas of Philadelphia County, Trial Division.  A true and correct

copy of Plaintiff's Complaint ("Complaint") is attached hereto as Exhibit 1.   Pursuant to 28

U.S.C. § 1446(a), copies of all other "process, pleadings, and orders" served in this action are

attached hereto as follows:

Exhibit 2 - Copies of all Entries of Appearances

Exhibit 3 - Copies of Motion and Proposed Order for creation of Complex Litigation Center

Exhibit 4 - Copy of Affidavit of Service of Notice of Intent to Serve Subpoena to Produce
           Documents on Specified Defendants

2.       Defendants remove this action based on Section 1503 of the Energy Policy Act of

2005, which expressly provides that any claims and legal actions related to actual or threatened

contamination of methyl tertiary-butyl ether ("MTBE") may be removed to the appropriate

<div align="center">5</div>

United States District Court.  This law was enacted on August 8, 2005.  *See* 42 U.S.C. §§ 7545, *et seq.*, Pub. L. 109-58, Title XV, § 1503.  Removal is appropriate here pursuant to the Energy Policy Act because, as described in greater detail below, Plaintiff's claims relate to alleged MTBE contamination.

3.      This Court is the proper court to which the action must be removed because it is the "district court of the United States for the district and division embracing the place where [the] action is pending."  28 U.S.C. § 1446(a).

4.      No Defendant was served prior to June 27, 2014.  Accordingly, this Notice of Removal is filed within the time frame provided by 28 U.S.C. § 1446(b).

5.      The following Defendants assent to and join in this removal (*see* Exhibit 5):

> American Refining Group, Inc.
> Atlantic Richfield Company
> BP America Inc.
> BP Amoco Chemical Company
> BP Products North America, Inc.
> BP West Coast Products, LLC
> Chevron U.S.A., Inc.
> CITGO Petroleum Corporation
> CITGO Refining and Chemicals Company L.P.
> Coastal Eagle Point Oil Company
> ConocoPhillips Company
> Crown Central LLC
> Cumberland Farms, INC.
> Duke Energy Merchants, LLC
> El Paso Merchant Energy Petroleum Company
> Equilon Enterprises, LLC
> George E. Warren Corporation
> Getty Petroleum Marketing, Inc.
> Gulf Oil Limited Partnership
> Hess Corporation
> Houston Refining, LP
> Lukoil Americas Corporation
> LyondellBasell Industries N.V.

Marathon Oil Corporation
Marathon Petroleum Company LP
Marathon Petroleum Corporation
Motiva Enterprises, LLC
Nustar Terminals Operations Partnership LP
Phillips 66
Premcor Refining Group, Inc.
Premcor USA, Inc.
Shell Oil Company
Shell Oil Products Company LLC
Sun Company, Inc.
Sunoco, Incorporated (R&M)
Texaco Inc.
TMR Company
Total Petrochemicals and Refining USA, Inc.
TRMI-H LLC
United Refining Company
Valero Energy Corporation
Valero Marketing And Supply Company
Valero Refining And Marketing Company
Western Refining Yorktown, Inc.

6.     Pursuant to the requirements of 28 U.S.C. § 1446(d), Defendants will promptly file a copy of this Notice of Removal with the Clerk of the Court of Common Pleas of Philadelphia County, Trial Division, where the action was originally filed.  Defendants will also promptly serve Plaintiff with a copy of this Notice of Removal.  A true and correct copy of the Notice of Filing of Notice of Removal (without exhibits) is attached hereto as Exhibit 6.

## JURISDICTION AND BASIS FOR REMOVAL

7.     Defendants remove this case on the basis of the Energy Policy Act of 2005, which specifies that "Claims and legal actions filed after the date of enactment of this Act [August 8, 2005] related to allegations involving actual or threatened contamination of methyl tertiary butyl ether (MTBE) may be removed to the appropriate United States District Court."  42 U.S.C. § 7545 note, Pub. L. 109-58, Title XV, § 1503, Aug. 8, 2005, 119 Stat. 1076.  As this action was

filed on June 19, 2014, was served no earlier than June 27, 2014 and includes allegations regarding MTBE contamination, this action is properly removed under the Energy Policy Act.

8.      In its Complaint, Plaintiff contends that Defendants' products containing MTBE have contaminated, or will or threaten to contaminate, waters of the Commonwealth of Pennsylvania.  Plaintiffs' Complaint makes specific allegations about actual and threatened contamination of the waters of the Commonwealth by MTBE.  Specifically, Plaintiff alleges that "[t]he injuries and threatened injuries from MTBE contamination are statewide" and that "[a]s a direct, indirect and proximate result of defendants' failures and breaches of duties as aforesaid, MTBE was released into the environment, causing, and threatening to cause, widespread contamination of the waters of the Commonwealth." *See, e.g.*, Ex. 1, ¶¶ 7, 187.  Accordingly, this action is one that may be removed to this Court pursuant to section 1503 of the Energy Policy Act.

9.      Because this is a case for which removal is expressly provided by an Act of Congress, jurisdiction is proper without regard to other federal statutes so long as it is a case to which this Court's judicial powers extend under Section 2, Article III of the Constitution of the United States. *See In re MTBE Prod. Liab. Litig., City of Merced Redev. Agcy. v. ExxonMobil Corp.*, 674 F. Supp. 2d 494, 496-504 (S.D.N.Y. 2009).  This Court has Article III jurisdiction of this case for two separate reasons.  First, although this case is not being removed pursuant to 28 U.S.C. § 1332, there is minimal, constitutional diversity because the controversy is one between citizens of different states within the meaning of the Constitution.  Plaintiff is the Commonwealth of Pennsylvania and one or more of the Defendants are citizens of states other than Pennsylvania.  For example, Exxon Mobil Corporation is incorporated under the laws of New Jersey and has its principal place of business in Texas, and many of the other Defendants

are likewise non-Pennsylvania corporations with their principal places of business in states other than Pennsylvania.  In addition, this suit is between a state and citizens of another state, and is not being commenced or prosecuted by those citizens against the state.

10.     Second, and as a further basis for removal jurisdiction, this case "aris[es] under" federal law, U.S. Const. Art. III, § 2, cl. 1, because a federal question is "an ingredient" of the case. *See Osborn v. Bank of U.S.*, 22 U.S. 738, 823 (1824).  Plaintiff's allegations relating to MTBE contamination raise questions of federal law, namely the reach of the Clean Air Act ("CAA") and the Energy Policy Act, which together are part of a comprehensive federal scheme. Plaintiff's allegations attack the broad federal scheme that regulates the content of gasoline, a system that expressly authorized and effectively required the conduct for which Plaintiff seeks to recover based on state common law.  Indeed, Plaintiff alleges that Defendants are liable for acts which complied with Environmental Protection Agency ("EPA") guidelines.   Specifically, Plaintiff seeks to hold oil industry participants liable for conduct directed by the EPA under the CAA:   the addition of oxygenates, such as MTBE, to gasoline.   Because there was an unavailability of sufficient quantities of alternative oxygenates, imposing state tort liability for Defendants' use of MTBE, without more, would "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *Arizona v. United States*, 132 S. Ct. 2492, 2505  (2012) (citation omitted).

11.     Likewise, Plaintiff's claims against Defendants for punitive damages (*see, e.g.*, Complaint ¶¶ 19), also based in whole or in part on Defendants' conduct that was in compliance with federal laws, orders, duties and standards, are subject to the federal defense that they are barred by the Due Process and Excessive Fines clauses of the United States Constitution.

12.     Finally, the Energy Policy Act permits removal of entire "legal actions."  42 U.S.C. § 7545 note, Pub. L. 109-58, Title XV, § 1503; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (constitutionality).  But, even if removal of only certain claims were proper under the Act, this Court would have supplemental jurisdiction over any other claims pursuant to 28 U.S.C. § 1367.

WHEREFORE, Defendants hereby remove this action from the Court of Common Pleas of Philadelphia County, Trial Division, to the United States District Court for the Eastern District of Pennsylvania.  Defendants do not waive and do hereby expressly reserve all rights and remedies, including as to any challenges to personal jurisdiction or proper service by Plaintiff.

**OF COUNSEL:**
Archer & Greiner, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
Tel:  (215) 963-3300
Fax:  (215) 963-9999
Email:  hrosenthal@archerlaw.com
         mrollo@archerlaw.com
         ajones@archerlaw.com

Howard A. Rosenthal
Marc A. Rollo
Arthur H. Jones, Jr.
   Attorneys for Defendants, Exxon Mobil
   Corporation and ExxonMobil Oil Corporation

James A. Pardo
Stephen J. Riccardulli
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173

EXHIBIT 1

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL
James A Donahue, III, Esq. (PA Atty. No.42624)
Executive Deputy Attorney General
Strawberry Square, 14th Floor
Harrisburg, Pennsylvania 17120
(717) 705-0418
COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL
Linda C. Barrett, Esq. (PA Atty. No. 46543)
Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, Pennsylvania  17101
(717) 787-9347
BERGER & MONTAGUE, P.C.
Daniel Berger, Esq. (PA Atty. No. 20275)
Tyler E. Wren, Esq. (PA Atty. No. 17666)
1622 Locust Street
Philadelphia, Pennsylvania 19103
(215) 875-3000
Special Counsel to the Commonwealth of Pennsylvania
COHEN, PLACITELLA & ROTH, P.C.
Stewart L. Cohen, Esq. (PA Atty. No. 25448)
Robert L. Pratter, Esq. (PA Atty. No. 02556)
Michael Coren, Esquire (PA Atty. No. 31037)
Two Commerce Square
Suite 2900, 2001 Market St
Philadelphia, Pennsylvania  19103
(215) 567-3500
Special Counsel to the Commonwealth of Pennsylvania
ATTORNEYS FOR PLAINTIFFS

THIS IS NOT AN
ARBITRATION MATTER
ASSESSMENT OF DAMAGES
HEARING IS REQUIRED

| | |
|---|---|
| The COMMONWEALTH OF PENNSYLVANIA By and through Pennsylvania Attorney Kathleen G. Kane, the PENNSYLVANIA INSURANCE DEPARTMENT; THE PENNSYLVANIA OF ENVIRONMENTAL PROTECTION and the PENNSYLVANIA UNDERGROUND STORAGE TANK INDEMNIFICATOIN FUND c/o Office of Attorney General Strawberry Square – 14th floor Harrisburg, PA 17120   , Plaintiffs VS. | : COURT OF COMMON PLEAS : PHILADELPHIA COUNTY, PA : : : : : : : : TERM, 2014 : : NO: : : : |
| EXXON MOBIL CORPORATION c/o CT Corporation Service Company Suite 103, 2595 Interstate Drive Harrisburg, PA 17110 | : : JURY TRIAL DEMANDED : : : : |

Case ID: 140602881

**EXXON MOBIL OIL CORPORATION**                        :
c/o CT Corporation Service Company                     :
Suite 103, 2595 Interstate Drive                       :
Harrisburg, PA 17110                                   :
And                                                    :
**AMERICAN REFINING GROUP, INC.**                      :
1000 Four Falls Corporate Center, Suite 215            :
West Conshohocken, PA 19428                            :
**ATLANTIC RICHFIELD COMPANY**                         :
c/o CT Corporation System                              :
1515 Market Street                                     :
Philadelphia, PA 19102                                 :
And                                                    :
**BP AMERICA INC.**                                    :
c/o CT Corporation System                              :
1515 Market Street                                     :
Philadelphia, PA 19102                                 :
And                                                    :
**BP AMOCO CHEMICAL COMPANY**                          :
116 Pine Street, Suite 320                             :
Harrisburg, PA 17101                                   :
And                                                    :
**BP PRODUCTS NORTH AMERICA, INC.**                    :
c/o The Prentice-Hall Corporation System               :
Suite 103, 2595 Interstate Drive                       :
Harrisburg, PA 17110                                   :
And                                                    :
**BP WEST COAST PRODUCTIONS, LLC**                     :
4 Centerpointe Drive                                   :
LaPalma, CA 90623                                      :
And                                                    :
**CHEMTURA CORPORATION**                               :
c/o CT Corporation Service Company                     :
Suite 103, 2595 Interstate Drive                       :
Harrisburg, PA 17110                                   :
And                                                    :
**CHEVRON U.S.A., INC.**                               :
c/o CT Corporation Service Company                     :
Suite 103, 2595 Interstate Drive                       :
Harrisburg, PA 17110                                   :
And                                                    :
**CITGO PETROLEUM CORPORATION**                        :
c/o CT Corporation System                              :
1515 Market Street                                     :
Philadelphia, PA 19102                                 :
And                                                    :

Case ID: 140602881

**CITGO REFINING AND CHEMICALS**                    :
**COMPANY, L.P:**                                    :
1802 Nueces Bay Blvd                                 :
Corpus Christi, Texas 78469                          :
And                                                  :
**COASTAL EAGLE POINT OIL COMPANY**                  :
c/o CT Corporation System                            :
1515 Market Street                                   :
Philadelphia, PA 19102                               :
And                                                  :
**CONOCO PHILLIPS COMPANY**                          :
c/o CT Corporation Service Company                   :
Suite 103, 2595 Interstate Drive                     :
Harrisburg, PA 17110                                 :
And                                                  :
**CROWN CENTRAL, L.L.C.**                            :
c/o CT Corporation Service Company                   :
Suite 103, 2595 Interstate Drive                     :
Harrisburg, PA 17110                                 :
And                                                  :
**CUMBERLAND FARMS, INC.**                           :
c/o CT Corporation System                            :
1515 Market Street                                   :
Philadelphia, PA 19102                               :
And                                                  :
**DUKE ENGERY MERCHANTS, LLC**                       :
c/o CT Corporation System                            :
1515 Market Street                                   :
Philadelphia, PA 19102                               :
And                                                  :
**EL PASO MERCHANT ENERGY-PETROLEUM**                :
**COMPANY**                                          :
c/o CT Corporation System                            :
116 Pine Street, Suite 320                           :
Harrisburg, PA 17101                                 :
And                                                  :
**ENERGY MERCHANT, LLC**                             :
c/o Lexis Document Services, Inc.                    :
Suite 103, 2595 Interstate Drive                     :
Harrisburg, PA 17110                                 :
And                                                  :
**EQUILON ENTERPRISES, LLC**                         :
c/o CT Corporation System                            :
1515 Market Street                                   :
Philadelphia, PA 19102                               :
And                                                  :

**GEORGE E. WARREN CORPORATION**                    :
c/o CT Corporation System                           :
1515 Market Street                                  :
Philadelphia, PA 19102                              :
And                                                 :
**GETTY PETROLEUM MARKETING, INC.**                 :
c/o CT Corporation System                           :
1515 Market Street                                  :
Philadelphia, PA 19102                              :
And                                                 :
**GETTY PROPERTIES CORPORATION**                    :
c/o CT Corporation System                           :
1515 Market Street                                  :
Philadelphia, PA 19102                              :
And                                                 :
**GULF OIL LIMITED PARTNERSHIP**                    :
c/o CT Corporation System                           :
Suite 320 116 Pine Street                           :
Harrisburg, PA 17101                                :
And                                                 :
**HESS CORPORATION**                                :
c/o CT Corporation System                           :
1515 Market Street                                  :
Philadelphia, PA 19102                              :
And                                                 :
**HOUSTON REFINING, LP**                            :
12000 Lawndale Street                               :
Houston, TX 77017                                   :
And                                                 :
**LUKOIL AMERICAS CORPORATION**                     :
1500 Hempstead Turnpike                             :
East Meadow, NY   11554                             :
And                                                 :
**LYONDELL BASSELL INDUSTRIES NV.**                 :
LyondellBasell Tower, Suite 700                     :
1221 McKinney Street                                :
Houston, TX   77010                                 :
And                                                 :
**MARATHON OIL CORPORATION**                        :
5555 San Felipe Road                                :
Houston, TX  77056                                  :
And                                                 :
**MARATHON PETROLEUM COMPANY, LP**                  :
c/o CT Corporation System                           :
Suite 320 116 Pine Street                           :
Harrisburg, PA 17101                                :

And                                                        :
**MARATHON PETROLEUM CORPORATION**                         :
539 South Main Street                                      :
Findlay, Ohio 45840                                        :
And                                                        :
**MOTIVA ENTERPRISES, LLC**                                :
c/o CT Corporation System                                  :
Suite 320 116 Pine Street                                  :
Harrisburg, PA 17101                                       :
And                                                        :
**NORTH ATLANTIC REFINING, Ltd**                           :
P.O. Box 40 – 1 Refinery Road                              :
Come by Chance NL A0B 1N0 CANADA                           :
And                                                        :
**NUSTAR TERMINALS OPERATIONS**                            :
 **PARTNERHIP LP**                                         :
c/o CT Corporation System                                  :
1515 Market Street                                         :
Philadelphia, PA 19102                                     :
And                                                        :
**PHILLIPS 66**                                            :
P.O. Box 4428                                              :
Houston, TX  77210                                         :
And                                                        :
**PHILLIPS 66 COMPANY**                                    :
c/o CT Corporation Service Company                         :
Suite 103, 2595 Interstate Drive                           :
Harrisburg, PA 17110                                       :
And                                                        :
**PREMCOR REFINING GROUP, INC.**                           :
c/o CT Corporation System                                  :
1515 Market Street                                         :
Philadelphia, PA 19102                                     :
And                                                        :
**PREMCOR USA, INC.**                                      :
1700 East Putnam Avenue                                    :
Old Greenwich, CT 06870                                    :
And                                                        :
**SHELL OIL COMPANY**                                      :
c/o CT Corporation System                                  :
Suite 320 116 Pine Street                                  :
Harrisburg, PA 17101                                       :
And                                                        :

Case ID: 140602881

**SHELL OIL PRODUCTS COMPANY, LLC**      :
c/o CT Corporation System      :
Suite 320 116 Pine Street      :
Harrisburg, PA 17101      :
And      :
**SUN COMPANY, INC.**      :
c/o CT Corporation System      :
Suite 103, 2595 Interstate Drive      :
Harrisburg, PA 17101      :
And      :
**SUNOCO, INCORPORATED (R&M)**      :
c/o CT Corporation System      :
Suite 103, 2595 Interstate Drive      :
Harrisburg, PA 17101      :
And      :
**TEXACO, INC.**      :
c/o CT Corporation System      :
Suite 103, 2595 Interstate Drive      :
Harrisburg, PA 17101      :
And      :
**TMR COMPANY**      :
910 Louisiana Street      :
Houston, TX 77002      :
And      :
**TRMI-H, LLC**      :
6001 Bollinger Canyon Road      :
San Ramon, CA 94583      :
And      :
**TOTAL PETROCHEMICALS AND REFINING**      :
  **USA, INC.**      :
c/o CT Corporation System      :
1515 Market Street      :
Philadelphia, PA 19102      :
And      :
**UNITED REFINING COMPANY**      :
15 Bradley Street      :
Warren, PA 16365      :
And      :
**VALERO ENERGY CORPORATION**      :
One Valero Way      :
San Antonio, TX 78249      :
And      :
**VALERO MARKETING AND SUPPLY COMPANY**    :
c/o CT Corporation System      :
1515 Market Street      :
Philadelphia, PA 19102      :

Case ID: 140602881

And                                                          :
**VALERO REFINING AND MARKETING COMPANY**:
One Valero Way                                               :
San Antonio, TX 78249                                        :
And                                                          :
**VITOL S.A., Inc.**                                         :
1100 Louisiana Street - Suite 5500                           :
Houston, TX  77002                                           :
And                                                          :
**WESTERN REFINING YORKTOWN, INC.**                          :
c/o CT Corporation System                                    :
1515 Market Street                                           :
Philadelphia, PA 19102                                       :
                                                             :
                              Defendants                     :
                                                             :

## CIVIL ACTION COMPLAINT
## 3E-TOXIC WASTE

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | La han demandado a usted en la corte. Si usted quiere defensersa de estas demandes expuentas en la paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abodago y entregar a la corte en forma escrita sus defensas or sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defienda, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Ademas, la corte puede docidir a favor del demandante y require que usted compla con todas las provisiones de esta demanda. Usted puede poder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. | LLEVE ESTA DEMANDA A UN ABODAGO INMEDIATAMENTE. SI NO TIENE ABODAGO O SINO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| **Philadelphia Bar Association**<br>**Lawyer Referral & Information Service**<br>**One Reading Center**<br>**Philadelphia, Pennsylvania 19107**<br>**Telephone:  (215) 238-6333** | **Associacion DeLicenciados De Filadelfia**<br>**Servicio DeReferencia E Información Legal**<br>**One Reading Center**<br>**Filadelfia, Pennsylvania 19107**<br>**Telefono:  (215) 238-1701** |

Case ID: 140602881

# IN THE COURT OF COMMON PLEAS OF
## PHILADELPHIA COUNTY

**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF ATTORNEY GENERAL**
Kathleen G. Kane, Esq. (PA Atty. No. 69680)
Attorney General
James A Donahue, III, Esq. (PA Atty. No. 42624)
Executive Deputy Attorney General
Strawberry Square, 14th Floor
Harrisburg, Pennsylvania 17120
(717) 705-0418

**COMMONWEALTH OF PENNSYLVANIA**
**GOVERNOR'S OFFICE OF GENERAL COUNSEL**
James D. Schultz, Esq. (PA Atty. No. 83417)
General Counsel
Linda C. Barrett, Esq. (PA Atty. No. 46543)
Senior Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, Pennsylvania  17101
(717) 787-9347

**BERGER & MONTAGUE, P.C.**
Daniel Berger, Esq. (PA Atty. No. 20275)
Tyler E. Wren, Esq. (PA Atty. No. 17666)
1622 Locust Street
Philadelphia, Pennsylvania 19103
(215) 875-3000
Special Counsel to the Commonwealth of Pennsylvania

**COHEN, PLACITELLA & ROTH, P.C.**
Stewart L. Cohen, Esq. (PA Atty. No. 25448)
Robert L. Pratter, Esq. (PA Atty. No. 02556)
Michael Coren, Esquire (PA Atty. No. 31037)
Two Commerce Square
Suite 2900, 2001 Market St
Philadelphia, Pennsylvania  19103
(215) 567-3500
Special Counsel to the Commonwealth of Pennsylvania

**JURY TRIAL DEMANDED**

**THIS IS NOT AN ARBITRATION CASE**

**ASSESSMENT  OF DAMAGE HEARING IS REQUIRED**

Case ID: 140602881

THE COMMONWEALTH OF
PENNSYLVANIA, by and through
Pennsylvania Attorney General Kathleen G.
Kane, the Pennsylvania Insurance
Department , the Pennsylvania Department
Of Environmental Protection and the
Pennsylvania Underground Storage Tank
Indemnification Fund

             Plaintiff,

        v.

**EXXON MOBIL CORPORATION,**
   individually and as f/k/a, d/b/a and/or
   successor in liability to ExxonMobil
   Refining and Supply Company, Exxon
   Chemical U.S.A., ExxonMobil Chemical
   Corporation, ExxonMobil Chemical
   U.S.A, Exxon Corporation, and Mobil
   Corporation;
**EXXONMOBIL OIL CORPORATION,**
   individually and as f/k/a, d/b/a and/or
   successor in liability to Mobil Oil
   Corporation;
**AMERICAN REFINING GROUP, INC.;**
**ATLANTIC RICHFIELD COMPANY,**
   individually and as f/k/a, d/b/a and/or
   successor in liability to Atlantic Richfield
   Delaware Corporation, Atlantic Richfield
   Company (a Pennsylvania corporation),
   ARCO Products Company, ARCO
   Chemical Company, a division of Atlantic
   Richfield Company, and ARCO Chemical
   Company, a Delaware Corporation;
**BP AMERICA INC.;**
**BP AMOCO CHEMICAL COMPANY,**
   individually and as f/k/a, d/b/a and/or
   successor in liability to Amoco Chemical
   Company, Amoco Chemicals Company,
   and Amoco Chemicals Corporation;
**BP PRODUCTS NORTH AMERICA,**

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

**TRIAL DIVISION**

**No.**

2

**INC.**, individually and as f/k/a, d/b/a
and/or successor in liability to BP Amoco
Corporation, Amoco Corporation, Amoco
Oil Company, BP Exploration & Oil Inc.,
Sohio Oil Company, BP Oil Inc. and BP
Oil Company;

**BP WEST COAST PRODUCTS, LLC**,
individually and as f/k/a, d/b/a and/or
successor in liability to Atlantic Richfield
Company, Atlantic Richfield Company (a
Pennsylvania corporation), and ARCO
Products Company;

**CHEMTURA CORPORATION**,
individually and as f/k/a, d/b/a and/or
successor in liability to Witco
Corporation;

**CHEVRON U.S.A., INC.**, individually and
as f/k/a, d/b/a and/or successor in liability
to Gulf Oil Corporation, Gulf Oil
Corporation of Pennsylvania, Chevron
Products Company and Chevron Chemical
Company;

**CITGO PETROLEUM
CORPORATION;**

**CITGO REFINING AND CHEMICALS
COMPANY, LP;**

**COASTAL EAGLE POINT OIL
COMPANY;**

**CONOCOPHILLIPS COMPANY**,
individually and as f/k/a, d/b/a and/or
successor in liability Phillips Petroleum
Company, Conoco, Inc., Tosco
Corporation, and Tosco Refining Co.;

**CROWN CENTRAL LLC**, individually
and as f/k/a, d/b/a and/or successor in
liability to Crown Central Petroleum
Corporation;

**CUMBERLAND FARMS, INC.;**

**DUKE ENERGY MERCHANTS, LLC;**

**EL PASO MERCHANT ENERGY-
PETROLEUM COMPANY**,
individually and as f/k/a, d/b/a and/or
successor in liability to Coastal Refining
and Marketing, Inc. and Coastal States
Trading, Inc.;

**ENERGY MERCHANT, LLC;**

3

Case ID: 140602881

**EQUILON ENTERPRISES, LLC,**
individually and as f/k/a, d/b/a and/or
successor to Shell Oil Products US, Shell
Oil Products Company LLC, Shell Oil
Company, and Texaco Refining and
Marketing Inc.;
**GEORGE E. WARREN**
  **CORPORATION;**
**GETTY PETROLEUM MARKETING,**
  **INC.;**
**GETTY PROPERTIES**
  **CORPORATION;**
**GULF OIL LIMITED PARTNERSHIP;**
  **HESS CORPORATION,** individually
  and as f/k/a, d/b/a and/or successor in
  liability to Amerada Hess Corporation;
**HOUSTON REFINING, LP,** individually
  and as f/k/a, d/b/a and/or successor in
  liability to Lyondell-Citgo Refining, LP;
**LUKOIL AMERICAS CORPORATION,**
  individually and as f/k/a, d/b/a and/or
  successor in liability to Getty Petroleum
  Marketing Inc.;
**LYONDELLBASELL INDUSTRIES**
  **N.V.,** individually and as f/k/a, d/b/a
  and/or successor in liability to Lyondell
  Chemical Company, Lyondell Chemical
  Worldwide, Inc., Arco Chemical
  Company and Arco Chemical
  Corporation;
**MARATHON OIL CORPORATION,**
  individually and as f/k/a, d/b/a and/or
  successor in liability to Marathon Oil Co.,
  Marathon DE, Marathon PC, Marathon
  Petroleum Corporation, Marathon
  Holdings, and Marathon Pipeline;
**MARATHON PETROLEUM**
  **COMPANY LP,** individually and as
  f/k/a, d/b/a and/or successor in liability to
  Marathon Petroleum Company, LLC and
  Marathon Ashland Petroleum Company
  LLC;
**MARATHON PETROLEUM**
  **CORPORATION,** individually and as
  f/k/a, d/b/a and/or successor in liability to
  Marathon Oil Co., Marathon DE,

4

Marathon PC, Marathon Petroleum,
Marathon Holdings, and Marathon
Pipeline;

**MOTIVA ENTERPRISES, LLC,**
individually and as f/k/a, d/b/a and/or
successor in liability to Shell Oil Products
Company, LLC, Shell Oil Products
Company, Star Enterprise, and Texaco
Refining and Marketing, Inc. East (a/k/a
TRMI East);

**NORTH ATLANTIC REFINING LTD.;**

**NUSTAR TERMINALS OPERATIONS
PARTNERSHIP LP,** individually and as
f/k/a, d/b/a and/or successor in liability to
Support Terminals Operating Partnership,
LP and ST Services, Inc.;

**PHILLIPS 66,** individually and as f/k/a,
d/b/a and/or successor in liability to
ConocoPhillips Company, Phillips
Petroleum Company, Conoco, Inc., Tosco
Corporation, and Tosco Refining Co.;

**PHILLIPS 66 COMPANY,** individually
and as f/k/a, d/b/a and/or successor in
liability to ConocoPhillips Company,
Phillips Petroleum Company, Conoco,
Inc., Tosco Corporation, and Tosco
Refining Co.;

**PREMCOR REFINING GROUP, INC.;**

**PREMCOR USA, INC.;**

**SHELL OIL COMPANY,** individually and
as f/k/a, d/b/a and/or successor in liability
to Deer Park Refining LP, Shell Oil, Shell
Oil Products, Shell Chemical, Shell
Trading US, Shell Energy Services,
Texaco Inc., The Pennzoil Company and
Pennzoil-Quaker State Company;

**SHELL OIL PRODUCTS COMPANY
LLC,** individually and as f/k/a, d/b/a
and/or successor in liability to Shell Oil
Products Company;

**SUN COMPANY, INC.,** individually and
as f/k/a, d/b/a and/or successor in liability
to Sunoco, Inc., Sun Oil Company (PA),
and Sun Oil Company;

**SUNOCO, INCORPORATED (R&M),**
individually and as f/k/a, d/b/a and/or

Case ID: 140602881

successor in liability to Sunoco, Inc.
(R&M), Sun Company, Inc. (R&M), Sun
Refining and Marketing Company, and
Sun Oil Company of Pennsylvania;
**TEXACO INC**, individually and as f/k/a,
d/b/a and/or successor in liability to
Texaco Refining and Marketing, Inc.;
**TMR COMPANY,** individually and as
f/k/a, d/b/a and/or successor in liability to
Texaco Refining and Marketing, Inc. and
TRME Company (f/k/a Texaco Refining
and Marketing (East), Inc.);
**TRMI-H LLC,** individually and as f/k/a,
d/b/a and/or successor in liability to TRMI
Holdings Inc., Texaco Refining and
Marketing Inc., Getty Refining and
Marketing Company, and Getty Oil
Company (Eastern Operations), Inc.;
**TOTAL PETROCHEMICALS AND
REFINING USA, INC.;**
**UNITED REFINING COMPANY;**
**VALERO ENERGY CORPORATION,**
individually and as f/k/a, d/b/a and/or
successor in liability to Valero R&M;
**VALERO MARKETING AND SUPPLY
COMPANY;**
**VALERO REFINING AND
MARKETING COMPANY;**
**VITOL S.A., INC.;**
**WESTERN REFINING YORKTOWN,
INC.**, individually and as f/k/a, d/b/a
and/or successor in liability to Giant
Yorktown, Inc.,

Defendants.

## **COMPLAINT**

Plaintiff Commonwealth of Pennsylvania, by and through Pennsylvania Attorney General

Kathleen G. Kane, the Pennsylvania Department of Environmental Protection, the Pennsylvania

Insurance Department and the Pennsylvania Underground Storage Tank Indemnification Fund

6

(collectively the "Commonwealth"), files this Complaint against the above-named defendants and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1.      The Commonwealth brings this action to redress injury, and the threat of injury, resulting from contamination of the waters of the Commonwealth by methyl tertiary butyl ether ("MTBE"), a chemical additive used in gasoline that was widely distributed in Pennsylvania, and its derivative and breakdown products.  It also seeks to prevent injuries and redress past injuries relating to defendants' unfair and deceptive trade practices and acts in the marketing of MTBE and gasoline containing MTBE.

2.      Article I, Section 27 of the Pennsylvania Constitution states: "The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment.  Pennsylvania's public natural resources are the common property of all the people, including generations yet to come.  As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

3.      The Commonwealth is vested with the authority under its constitution and laws to protect and seek compensation and other remedies for injury, and threat of injury, to the natural resources of the Commonwealth, in its own right, in its *parens patriae* capacity on behalf of its citizens and as trustee of the Commonwealth's natural resources.

4.      The waters of the Commonwealth, both above and below ground, are an indivisible public natural resource in which the Commonwealth has substantial property and other interests for which it acts as Constitutional trustee for the use and benefit of all its citizens.

7

5.      The Commonwealth has a quasi-sovereign interest in protecting the health, safety and well-being, both physical and economic, of its citizens with respect to the waters of the Commonwealth, including those that constitute the statewide water supply.

6.      The Commonwealth has the right and authority to protect, conserve, manage and redress injury, and threatened injury, to these waters for its own interests and the interests of its citizens and future generations.

7.      The injuries and threatened injuries from MTBE contamination are statewide and involve and affect in a substantial way a significant portion of the state's population.

8.      The Commonwealth seeks to recover or obtain (i) the costs paid or incurred to date and in the future to detect, define the extent of, monitor, treat, abate, remove and/or otherwise remediate MTBE contamination and threatened contamination of groundwater and both public and private water wells (which are sourced from groundwater) throughout Pennsylvania; including costs to restore all MTBE contaminated waters to their pre-discharge condition; (ii) damages to, including the loss of use and diminution in value of, the waters of the Commonwealth, from MTBE contamination resulting from defendants' conduct; and (iii) statutory equitable remedies relating to defendants' unfair and deceptive trade practices and acts in the marketing of MTBE and gasoline containing MTBE ("MTBE gasoline").

9.      As a result of releases of gasoline containing MTBE from various gasoline stations and gasoline storage, transfer, delivery and dispensing systems ("gasoline storage and delivery systems"), MTBE has been detected in waters of the Commonwealth throughout the state.  The waters of the Commonwealth that have been contaminated by these releases of MTBE include groundwater and other waters located directly beneath, on, or adjacent to these release

Case ID: 140602881

sites, waters connected to waters beneath, on, or adjacent to these release sites, and public and private drinking water wells.

10.     MTBE is more persistent and mobile in groundwater than other constituents of gasoline. As a result of these characteristics, MTBE spreads farther and contaminates more groundwater than other gasoline ingredients.

11.     MTBE can cause adverse health effects.  MTBE is a known carcinogen. MTBE can also render drinking water foul, putrid and unfit for human consumption at low concentrations. MTBE contamination has injured, continues to injure and threatens to injure, the waters of the Commonwealth, and the health, safety and welfare of the citizens of Pennsylvania.

12.     Defendants designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, stored, marketed and/or otherwise supplied (directly or indirectly) MTBE and MTBE gasoline that was delivered stored and sold into Pennsylvania (or to areas outside Pennsylvania affecting the waters of the Commonwealth) resulting in contamination of the waters of the Commonwealth.

13.     Defendants include MTBE manufacturers and MTBE gasoline refiners and major-brand marketers and distributors.  At all times relevant to this action, defendants together controlled virtually the entire market in Pennsylvania for MTBE and MTBE gasoline.

14.     In addition to producing, distributing and/or supplying MTBE or MTBE gasoline for importation into and sale in Pennsylvania, defendants, despite the availability of reasonable and safe alternatives, knowingly and willfully promoted, marketed, distributed and sold MTBE and MTBE gasoline within Pennsylvania.

15.     Defendants individually and jointly promoted MTBE and/or MTBE gasoline despite the availability of reasonable alternatives and their actual or constructive knowledge that

Case ID: 140602881

the contamination of the waters of the Commonwealth with MTBE would be the result of their

conduct.

16.     Defendants engaged in this conduct when they knew or reasonably should have

known that MTBE could and would be released into the environment from various MTBE

gasoline storage and delivery systems, thereby contaminating the waters of the Commonwealth.

17.     Defendants knew or reasonably should have known that MTBE contamination

would interfere with the Commonwealth's interests in protecting and preserving its public

natural resources, including the waters of the Commonwealth, and otherwise impact and threaten

the public health, safety and welfare, as has occurred and is continuing to occur within the state.

18.     Defendants also knew or reasonably should have known that, if disclosed, the

effects of MTBE environmental contamination would diminish the environmental benefits of

MTBE gasoline claimed by defendants when compared to available alternative formulations of

gasoline without MTBE.

19.     Defendants are strictly liable for manufacturing and/or supplying a defective

product and failing to provide adequate warnings or instructions in connection therewith.

Defendants are also liable for creating public nuisances by the foreseeable release of MTBE

containing gasoline into the waters of the Commonwealth, for trespass thereby upon the waters

of the Commonwealth, for negligently causing damage to the waters of the Commonwealth and

for all resulting damages. Defendants also are liable for punitive damages to reflect the

aggravating circumstances of their wanton, malicious, oppressive and fraudulent conduct as set

forth herein and for civil penalties and equitable relief under the Pennsylvania Unfair Trade

Practices and Consumer Protection Law based upon defendants' efforts to fraudulently,

deceptively and unfairly market MTBE and MTBE gasoline as safe for the environment.

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction over this matter under 42 Pa. C.S.A. §§ 931 (a) and 761 (b) as it is a civil action by the Commonwealth government.

21.     This Court has personal jurisdiction over defendants as they are either Pennsylvania corporations or entities authorized to do business in the state, are foreign corporations or entities registered with the Pennsylvania Department of State to do business in the state, do sufficient business with sufficient minimum contacts in the state or otherwise intentionally avail themselves of the Pennsylvania market through the sale, manufacturing, distribution or processing of petroleum products in the state or have committed torts in this state so as to render the exercise of jurisdiction over defendants consistent with notions of fair play and substantial justice.

22.     Venue is proper in this Court as to all defendants under Pa. R.C.P. Rule 2179 (a) in that certain of the defendants have their registered offices or principal place of business in this County, certain defendants have regularly conducted business in this County, some of the causes of action arose in this County and some of the transactions and occurrences out of which the causes of action arose took place in this County. In addition, venue is proper under Pa. R.C.P. Rule 1006 (c)(1), as this action is one to enforce a joint or joint and several liability against the defendants and venue is otherwise laid against one or more of the defendants under the general rules.

**PLAINTIFF**

23.     Plaintiff Commonwealth of Pennsylvania, pursuant to the Pennsylvania Constitution Art. 1, § 27, is charged with conserving and maintaining Pennsylvania's natural resources, including the waters of the Commonwealth, for the benefit of all its citizens. The

11

Case ID: 140602881

Pennsylvania Constitution provides that public natural resources, including the waters of the Commonwealth, are the common property of the people, including those generations yet to come.

24.     The Commonwealth brings this action as a trustee of the waters of the Commonwealth and pursuant to its police powers, which include but are not limited to, its powers to prevent and abate pollution of the waters of the Commonwealth, to prevent and abate nuisances and to prevent and abate hazards to the public health, safety, and welfare, and to the environment.

25.     The Commonwealth has a significant property interest in the waters of the Commonwealth and a quasi-sovereign and a natural resource trustee interest in protecting the waters of the Commonwealth from contamination. The contamination of the waters of the Commonwealth by MTBE and MTBE gasoline constitutes injury to the waters of the Commonwealth which are held in trust by the Commonwealth on behalf of all its citizens.  The Commonwealth brings this action directly in its own right, in its *parens patriae* capacity and as trustee of the natural resources.

26.     The Pennsylvania Department of Environmental Protection ("DEP") is a department within the Executive Branch of the Commonwealth government, vested with the authority to protect the environment, prevent and remediate pollution, and protect the public health, comfort, safety and welfare.

27.     The Pennsylvania Insurance Department is a department within the Executive Branch of the Commonwealth government which administers the Pennsylvania Underground Storage Tank Indemnification Fund ("Fund" or "USTIF").  USTIF is a special, restricted fund of the State Treasury and was created by the Storage Tank and Spill Prevention Act, Act 32 of

Case ID: 140602881

1989, 35 P. S. §§6021.101 *et seq*., as amended for the purpose of making payments to eligible

owners, operators and certified tank installers of undergrounds storage tanks ("USTs") for

remedial action.

28.    As a result of defendants' conduct as alleged herein, the Commonwealth has

suffered damages to its water resources and has expended its funds through USTIF, DEP and

other departments in defining the extent of, monitoring, treatment and remediation of MTBE

contamination throughout the state.

29.    The Commonwealth also sues pursuant to its statutory right of subrogation under

25 Pa. Code § 977.40(a) to the third party claims against defendants of the underground tank

owners and operators who are claimants under USTIF.  In its quasi-sovereign *parens patriae,*

trustee and other governmental capacities, the Commonwealth's interests in these claims are

separate and apart from the interests of the private parties to which it is subrogated.

30.    To the extent that Commonwealth has previously settled with one or more of the

defendants for specific damages and losses resulting from MTBE releases at certain sites, such

damages and losses are not sought to be recovered in this Complaint.  The Commonwealth also

is not seeking to recover from any defendant monies expended by USTIF to define the extent of,

monitor, treat and remediate MTBE releases from sites where any such defendant was a USTIF

indemnified owner or operator of the site at the time of release or discovery of the release.

31.    The Commonwealth, through its Attorney General Kathleen G. Kane, also brings

this action against the defendants pursuant to the Commonwealth Attorneys Act, 71 P. S. §732-

204 and the Unfair Trade Practices and Consumer Protection Law, 73 P. S. § 201-1 et seq.

("UTPCPL"), to obtain equitable relief, restoration of moneys acquired by defendants by means

of their violations of the statute, and civil penalties against defendants.

Case ID: 140602881

**DEFENDANTS**

32.     Defendant Exxon Mobil Corporation is a New Jersey corporation with a registered Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas 75039.  Defendant Exxon Mobil Corporation was formerly known as, did business as, and/or is the successor in liability to ExxonMobil Refining and Supply Company, Exxon Chemical U.S.A., ExxonMobil Chemical Corporation, ExxonMobil Chemical U.S.A, Exxon Corporation and Mobil Corporation.  The terms "Exxon" and "Mobil" as used in this Complaint refer to Defendants Exxon Mobil Corporation and ExxonMobil Oil Corporation and their related entities ExxonMobil Refining and Supply Company, Exxon Chemical U.S.A., ExxonMobil Chemical Corporation and ExxonMobil Chemical U.S.A, Exxon Corporation and Mobil Corporation.

33.     Defendant ExxonMobil Oil Corporation is a New York corporation with a registered Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas 75039.  Defendant ExxonMobil Oil Corporation was formerly known as, did business as, and/or is the successor in liability to Mobil Oil Corporation.

34.     Defendant American Refining Group, Inc. is a Pennsylvania corporation with a registered Pennsylvania office at 100 Four Falls Corporate Ctr., Ste. 215, West Conshohocken, Pennsylvania 19428, and its principal place of business at 77 N Kendall Ave., Bradford, Pennsylvania 16701.  The term "American Refining" as used in this Complaint refers to Defendant American Refining Group, Inc.

14

35.     Defendant Atlantic Richfield Company is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, PA 19102, and its principal place of business at 501 Westlake Park Boulevard, Houston, Texas 77079. Defendant Atlantic Richfield Company was formerly known as, did business as, and/or is the successor in liability to Atlantic Richfield Delaware Corporation, Atlantic Richfield Company (a Pennsylvania corporation), ARCO Products Company, ARCO Chemical Company, a division of Atlantic Richfield Company, and ARCO Chemical Company, a Delaware corporation.

36.     BP America Inc. is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 4101 Winfield Road, Warrenville, Illinois 60555. The term "BP America" as used in this Complaint refers to Defendant BP America Inc.

37.     Defendant BP Amoco Chemical Company is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101, and its principal place of business at 150 West Warrenville Road, Naperville, Illinois 60563. Defendant BP Amoco Chemical was formerly known as, did business as, and/or is the successor in liability to Amoco Chemical Company, Amoco Chemicals Company and Amoco Chemicals Corporation. The term "BP Amoco Chemical" as used in this Complaint refers to Defendant BP Amoco Chemical Company, its related entities Amoco Chemical Company, Amoco Chemicals Company and Amoco Chemicals Corporation.

38.     Defendant BP Products North America, Inc. is a Maryland corporation with a registered Pennsylvania office c/o The Prentice-Hall Corporation System, Inc., 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at 28100

15

Torch Parkway, Warrenville, Illinois 60555.  Defendant BP Products North America, Inc. was

formerly known as, did business as, and/or is the successor in liability to BP Amoco Corporation,

Amoco Corporation, Amoco Oil Company, BP Exploration & Oil Inc., Sohio Oil Company, BP

Oil Inc. and BP Oil Company.   The terms "BP Products NA" and "BP Amoco" as used in this

Complaint refer to Defendant BP Products North America, Inc., and its related entities BP

Amoco Corporation, Amoco Corporation, Amoco Oil Company, BP Exploration & Oil Inc.,

Sohio Oil Company, BP Oil Inc. and BP Oil Company.

      39.      Defendant BP West Coast Products, LLC is a Delaware limited liability company

with its principal place of business at 4 Centerpointe Drive, La Palma, California 90623.

Defendant BP West Coast Products was formerly known as, did business as, and/or is the

successor in liability to Atlantic Richfield Company, Atlantic Richfield Company (a

Pennsylvania corporation) and ARCO Products Company.  The terms "BP West Coast Products"

and "ARCO" as used in this Complaint refer to Defendants BP West Coast Products, LLC and

Atlantic Richfield Company and their related entities Atlantic Richfield Delaware Corporation,

Atlantic Richfield Company (a Pennsylvania corporation), ARCO Products Company, ARCO

Chemical Company, an unincorporated division of Atlantic Richfield Company, and ARCO

Chemical Company, a Delaware corporation.

      40.      Defendant Chemtura Corporation is a Delaware corporation with a registered

Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103,

Harrisburg, Pennsylvania 17110, and its principal place of business at 1818 Market Street, Suite

3700, Philadelphia, Pennsylvania 19103.  Defendant Chemtura Corporation was formerly known

as, did business as, and/or is the successor in liability to Witco Corporation.  The term

Case ID: 140602881

"Chemtura" as used in this Complaint refers to Defendant Chemtura Corporation and its related entity Witco Corporation.

41.     Defendant Chevron U.S.A., Inc. is a Pennsylvania corporation with a registered Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583.  In approximately 1986, Chevron U.S.A., Inc. sold substantially all of its retail outlets and other marketing assets in the Northeast region of the United States to Cumberland Farms.  Defendant Chevron U.S.A., Inc. was formerly known as, did business as, and/or is the successor in liability to Gulf Oil Corporation, Gulf Oil Corporation of Pennsylvania, Chevron Products Company and Chevron Chemical Company.  The term "Chevron" as used in this Complaint refers to Defendant Chevron U.S.A., Inc. and its related entities Chevron Products Company, Gulf Oil Corporation of Pennsylvania and Gulf Oil Corporation.

42.     Defendant CITGO Petroleum Corporation is a Delaware Corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 1293 Eldridge Pkwy, Houston, Texas 77077.  Defendant CITGO Petroleum Corporation is a wholly-owned subsidiary of PDV America, Inc., an indirect, wholly-owned subsidiary of Petróleos de Venezuela, S.A., the national oil company of the Bolivarian Republic of Venezuela.  The term "CITGO" as used in this Complaint refers to Defendants CITGO Petroleum Corporation and CITGO Refining and Chemicals Company, LP, and their related entities PDV America, Inc. and Petróleos de Venezuela, S.A.

17

43.     Defendant CITGO Refining and Chemicals Company, LP is a Delaware limited partnership with its principal place of business at 1802 Nueces Bay Blvd., Corpus Christi, Texas 78469.

44.     Defendant Coastal Eagle Point Oil Company is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 1001 Louisiana Street, Houston, Texas 77002. The term "Coastal Eagle" as used in this Complaint refers to Defendant Coastal Eagle Point Oil Company.

45.     Defendant ConocoPhillips Company is a Delaware corporation with a registered Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at 600 North Dairy Ashford, Houston, Texas 77079. ConocoPhillips Company was formerly known as, did business as, and/or is the successor in liability to Phillips Petroleum Company, Conoco, Inc., Tosco Corporation and Tosco Refining Co. The term "ConocoPhillips" as used in this Complaint refers to Defendants ConocoPhillips Company, Phillips 66 and Phillips 66 Company and to their related entities Phillips Petroleum Company, Conoco Inc., Tosco Corporation and Tosco Refining Co.

46.     Defendant Crown Central LLC is a Maryland limited liability company with a registered Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at One North Charles Street, Baltimore, Maryland 21201. Defendant Crown Central LLC was formerly known as, did business as, and/or is the successor in liability to Crown Central Petroleum Corporation. The

18

term "Crown Central" as used in this Complaint refers to Defendant Crown Central LLC and its related entity Crown Central Petroleum Corporation.

47.    Defendant Cumberland Farms, Inc. is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 100 Crossings Boulevard, Framingham, MA 01702. In approximately 1986, Chevron U.S.A. Inc. sold substantially all of its retail outlets and other marketing assets in the Northeast region of the United States to Defendant Cumberland Farms, Inc. The term "Cumberland Farms" as used in this Complaint refers to Defendant Cumberland Farms, Inc.

48.    Defendant Duke Energy Merchants, LLC is a Delaware limited liability company with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 5555 San Felipe Road, Houston, Texas 77056. The term "Duke Energy" as used in this Complaint refers to Defendant Duke Energy Merchants, LLC.

49.    Defendant El Paso Merchant Energy-Petroleum Company is a Delaware limited liability company with a registered Pennsylvania office c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101, and its principal place of business at 1001 Louisiana Street, Houston, Texas 77002. Defendant El Paso Merchant Energy-Petroleum Company was formerly known as, did business as, and/or is the successor in liability to Coastal Refining and Marketing, Inc. and Coastal States Trading, Inc. The term "El Paso" as used in this Complaint refers to Defendant El Paso Merchant Energy-Petroleum Company and its related entities Coastal Refining and Marketing, Inc. and Coastal States Trading, Inc.

19

50.     Defendant Energy Merchant, LLC is a Delaware limited liability company with a registered Pennsylvania office c/o Lexis Document Services Inc., 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at 5 Lake Fanny Road, Bel Air, Maryland 21014.  The term "Energy Merchant" as used in this Complaint refers to Defendant Energy Merchant, LLC.

51.     Defendant Equilon Enterprises, LLC is a Delaware limited liability company with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 910 Louisiana Street, Suite 2200, Houston, Texas 77002.  Defendant Equilon Enterprises, LLC was formerly known as, did business as, and/or is the successor in liability to Shell Oil Products US, Shell Oil Products Company LLC, Shell Oil Company and Texaco Refining and Marketing Inc.   The term "Equilon" as used in this Complaint refers to Defendant Equilon Enterprises, LLC. and its related entities Shell Oil Products US, Shell Oil Products Company LLC, Shell Oil Company and Texaco Refining and Marketing Inc.

52.     Defendant George E. Warren Corporation is a Massachusetts corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 3001 Ocean Drive, Vero Beach, Florida 32963.  The term "George E. Warren" as used in this Complaint refers to Defendant George E. Warren Corporation.

53.     Defendant Getty Petroleum Marketing, Inc. is a Maryland corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 1500 Hempstead Turnpike, East Meadow, New York 11554.  Defendant Getty Petroleum Marketing, Inc. filed for Chapter 11

Case ID: 140602881

bankruptcy reorganization on December 5, 2011. The claims asserted herein against Getty

Petroleum Marketing, Inc. were not discharged as a result of the bankruptcy as they arise from

defendant's fraud, seek injunctive relief and/or the imposition of statutory penalties.  The term

"Getty" as used in this Complaint refers to Defendants Getty Petroleum Marketing, Inc. and

Getty Properties Corporation.

      54.    Defendant Getty Properties Corporation is a Delaware corporation with a

registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia,

Pennsylvania  19102, and its principal place of business at 125 Jericho Turnpike, Jericho, New

York 11753.

      55.    Defendant Gulf Oil Limited Partnership is a Delaware limited partnership with a

registered Pennsylvania office c/o CT Corporation System, 116 Pine Street, Suite 320,

Harrisburg, Pennsylvania 17101, and its principal place of business at 100 Crossing Boulevard,

Framingham, Massachusetts 01702.  Gulf Oil Limited Partnership is a subsidiary of Cumberland

Farms, Inc. and is controlled by Cumberland Farms, Inc.  The term "GOLP" as used in this

Complaint refers to Defendant Gulf Oil Limited Partnership and Cumberland Farms, Inc.

      56.    Defendant Hess Corporation is a Delaware corporation with a registered

Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania

19102, and its principal place of business at 1185 Avenue of the Americas, 40th Floor, New

York, New York 10036.  Defendant Hess Corporation was formerly known as, did business as,

and/or is the successor in liability to Amerada Hess Corporation.  The term "Hess" as used in this

Complaint refers to Defendant Hess Corporation and its related entity Amerada Hess

Corporation.

Case ID: 140602881

57.    Defendant Houston Refining LP is a Texas limited partnership with its principal place of business at 12000 Lawndale, Houston, Texas 77017.  Defendant Houston Refining LP was formerly known as, did business as, and/or is the successor in liability to Lyondell-Citgo Refining, LP.   Defendant Houston Refining LP is a wholly owned subsidiary of and is controlled by Defendant Lyondell.   Defendant Houston Refining LP filed for Chapter 11 bankruptcy reorganization in January 2009 and emerged from bankruptcy in May 2010 under an approved plan of reorganization.  The claims asserted herein against Defendant Houston Refining, L.P. were not discharged as a result of the bankruptcy as they arise from defendant's fraud, seek injunctive relief and/or the imposition of statutory fines and penalties.

58.    Defendant Lukoil Americas Corporation is a Delaware corporation with its principal place of business at 1500 Hempstead Turnpike, East Meadow, New York 11554. Defendant Lukoil Americas Corporation was formerly known as, did business as, and/or is the successor in liability to Defendant Getty Petroleum Marketing, Inc.  The term "Lukoil" as used in this Complaint refers to Defendants Lukoil Americas Corporation and Getty Petroleum Marketing, Inc.

59.    Defendant LyondellBasell Industries N.V. is a Dutch corporation with its principal place of business at LyondellBasell Tower, Ste. 700, 1221 McKinney Street, Houston, Texas.  It was formerly known as, did business as, and/or is the successor in liability to Lyondell Chemical Company, Lyondell Chemical Worldwide, Inc., Arco Chemical Company and Arco Chemical Corporation.  Arco Chemical Corporation, which was incorporated in 1965 and changed its name to Arco Chemical Company in 1987 (collectively "Arco Chemical") was acquired by Lyondell Chemical in 1998.  On January 1, 1999, Arco Chemical changed its name to Lyondell Chemical Worldwide, Inc. and then merged into Lyondell Chemical Company.

22

Lyondell Chemical Company filed for Chapter 11 bankruptcy reorganization in January 2009 and emerged from bankruptcy in May 2010 under an approved plan of reorganization as LyondellBasell Industries N.V.   The claims asserted herein against Defendant LyondellBasell Industries N.V. were not discharged as a result of the bankruptcy as they arise from defendant's fraud, seek injunctive relief and/or the imposition of statutory penalties.  The terms "Lyondell" as used in this Complaint refers to Defendant LyondellBasell Industries N.V. and its related entities Lyondell Chemical Company, Lyondell Chemical Worldwide, Inc., Arco Chemical Company and Arco Chemical Corporation.

60.     Defendant Marathon Oil Corporation is a Delaware corporation with its principal place of business at 5555 San Felipe Road, Houston, Texas 77056.  Defendant Marathon Oil Corporation was formerly known as, did business as, and/or is the successor in liability to Marathon Oil Co., Marathon DE, Marathon PC, Marathon Petroleum Corporation, Marathon Holdings and Marathon Pipeline. The term "Marathon" as used in this Complaint refers to Defendants Marathon Oil Corporation, Marathon Petroleum Company LP and Marathon Petroleum Corporation and their related entities Marathon Oil Co., Marathon DE, Marathon PC, Marathon Ashland Petroleum Company LLC, Marathon Holdings and Marathon Pipeline.

61.     Defendant Marathon Petroleum Company LP is a limited partnership organized and existing under the laws of the State of Delaware with a registered Pennsylvania office c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101, and its principal place of business at 539 South Main Street, Findlay, Ohio 45840.  Defendant Marathon Petroleum Company LP was formerly known as, did business as, and/or is the successor in liability to Marathon Petroleum Company LLC and Marathon Ashland Petroleum Company LLC.

23

62.     Defendant Marathon Petroleum Corporation is a Delaware corporation with its principal place of business at 539 South Main Street, Findlay, Ohio 45840. Defendant Marathon Petroleum Corporation was formerly known as, did business as, and/or is the successor in liability to Marathon Oil Co., Marathon DE, Marathon PC, Marathon Petroleum, Marathon Holdings and Marathon Pipeline.

63.     Defendant Motiva Enterprises, LLC is a Delaware limited liability company with a registered Pennsylvania office c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101, and its principal place of business at 700 Milam Street, Suite 2028, Houston, Texas 77002. Defendant Motiva Enterprises, LLC was formerly known as, did business as, and/or is the successor in liability to Shell Oil Products Company, LLC, Shell Oil Products Company, Star Enterprise, and Texaco Refining and Marketing, Inc. East (a/k/a TRMI East). The term "Motiva" as used in this Complaint refers to Defendant Motiva Enterprises, LLC, Shell Oil Products Company, LLC, Star Enterprise and Texaco Refining and Marketing, Inc. East (a/k/a TRMI East).

64.     Defendant North Atlantic Refining Ltd. is a Canadian company with its principal place of business in Come By Chance, Newfoundland, Canada. The term "North Atlantic Refining" as used in this Complaint refers to Defendant North Atlantic Refining Ltd.

65.     Defendant NuStar Terminals Operations Partnership, LP is a Delaware limited partnership with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at 17304 Preston Road, Suite 1000, Dallas, Texas 75252. Defendant NuStar Terminals Operations Partnership, LP was formerly known as, did business as, and/or is the successor in liability to Support Terminals Operating Partnership, LP and ST Services, Inc. The term "NuStar" as used in this Complaint

24

refers to Defendant NuStar Terminals Operations Partnership, LP and its related entities Support

Terminals Operating Partnership, LP and ST Services, Inc.

66.     Defendant Phillips 66 is a Delaware corporation with its principal place of

business at P.O. Box 4428, Houston, Texas. Phillips 66 was formerly known as, did business as,

and/or is the successor in liability to ConocoPhillips Company, Phillips Petroleum Company,

Conoco, Inc., Tosco Corporation and Tosco Refining, Co.

67.     Defendant Phillips 66 Company is a Delaware corporation with a registered

Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103,

Harrisburg, Pennsylvania 17110, and its principal place of business in Houston, Texas.

Defendant Phillips 66 Company was formerly known as, did business as, and/or is the successor

in liability to ConocoPhillips Company, Phillips Petroleum Company, Conoco, Inc., Tosco

Corporation and Tosco Refining, Co.

68.     Defendant Premcor Refining Group, Inc. is a Delaware corporation with a

registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia,

Pennsylvania  19102, and its principal place of business at 1700 East Putnam Ave., Old

Greenwich, Connecticut 06870.  Defendant Premcor Refining Group, Inc. is a wholly-owned

subsidiary of and is controlled by Defendant Valero Energy.  The term "Premcor" as used in this

Complaint refers to Defendants Premcor Refining Group, Inc. and Premcor USA Inc.

69.     Defendant Premcor USA Inc. is a Delaware corporation with its principal place of

business at 1700 East Putnam Ave., Old Greenwich, Connecticut 06870.  Defendant Premcor

USA Inc. is a wholly-owned subsidiary of and is controlled by Defendant Valero Energy

Corporation.

Case ID: 140602881

70.    Defendant Shell Oil Company is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101, and its principal place of business at One Shell Plaza, 910 Louisiana Street, Houston, Texas 77002.  Shell Oil Company is a wholly-owned subsidiary of Royal Dutch Shell PLC.  Shell Oil Company was formerly known as, did business as, and/or is the successor in liability to Deer Park Refining LP, Shell Oil, Shell Oil Products, Shell Chemical, Shell Trading US, Shell Energy Services, The Pennzoil Company and Pennzoil-Quaker State Company. The term "Shell" as used in this Complaint refers to Defendants Shell Oil Company and Shell Oil Products Company LLC and their related entities Deer Park Refining LP, Shell Oil Products, , Shell Oil Products Company, Shell Chemical, Shell Trading US, Shell Energy Services, Texaco Inc., Motiva, The Pennzoil Company, and Pennzoil-Quaker State Company.

71.    Defendant Shell Oil Products Company LLC is a Delaware limited liability company with a registered Pennsylvania office c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101, and its principal place of business at One Shell Plaza, 910 Louisiana Street, Houston, Texas 77002.  Shell Oil Products Company LLC was formerly known as, did business as, and/or is the successor in liability to Shell Oil Products Company.

72.    Defendant Sun Company, Inc. is a Pennsylvania corporation with a registered Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business in Philadelphia, Pennsylvania.  Defendant Sun Company, Inc. was formerly known as, did business as, and/or is the successor in liability to Sunoco, Inc., Sun Oil Company (PA) and Sun Oil Company.  The term "Sunoco" as used in this Complaint refers to Defendants Sun Company, Inc. and Sunoco,

26

Incorporated (R&M) and their related entities Sunoco, Inc., Sunoco, Inc. (R&M), Sun Company, Inc. (R&M), Sun Refining and Marketing Company, Sun Oil Company of Pennsylvania, Sun Oil Company (PA) and Sun Oil Company.

73.     Defendant Sunoco, Incorporated (R&M) is a Pennsylvania corporation with a registered Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at 1735 Market Street, Philadelphia, Pennsylvania 19103.  Defendant Sunoco, Incorporated (R&M) was formerly known as, did business as, and/or is the successor in liability to Sunoco, Inc. (R&M), Sun Company, Inc. (R&M), Sun Refining and Marketing Company, and Sun Oil Company of Pennsylvania.

74.     Defendant Texaco Inc. is a Delaware corporation with a registered Pennsylvania office c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110, and its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583.  Defendant Texaco Inc. was formerly known as, did business as, and/or is the successor in liability to Texaco Refining and Marketing, Inc.  The term "Texaco" as used in this Complaint refers to Defendant Texaco Inc. and its related entity Texaco Refining and Marketing, Inc.

75.     Defendant TMR Company is a Delaware corporation with its principal place of business at 910 Louisiana, Houston, Texas 77002.   Defendant TMR Company was formerly known as, did business as and/or is the successor in liability to Texaco Refining and Marketing, Inc. and TRME Company (f/k/a Texaco Refining and Marketing (East), Inc.).

76.     Defendant TRMI-H LLC is a Delaware corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583.  Defendant TRMI-H LLC

27

Case ID: 140602881

was formerly known as, did business as and/or is the successor in liability to TRMI Holdings Inc., Texaco Refining and Marketing Inc., Getty Refining and Marketing Company, and Getty Oil Company (Eastern Operations), Inc.

77.    Defendant Total Petrochemicals and Refining USA, Inc. is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at Total Plaza, 1201 Louisiana Street, Suite 1800, Houston, Texas 77002.  The term "Total" as used in this Complaint refers to Defendant Total Petrochemicals and Refining USA, Inc.

78.    Defendant United Refining Company is a Pennsylvania corporation with its registered office and principal place of business at 15 Bradley St., Warren, Pennsylvania 16365. The term "United Refining" as used in this Complaint refers to Defendant United Refining Company.

79.    Defendant Valero Energy Corporation is a Delaware corporation with its principal place of business at One Valero Way, San Antonio, Texas 78249.  Defendant Valero Energy Corporation was formerly known as, did business as, and/or is the successor in liability to Premcor Refining, Premcor Pipeline and Valero PA.  The term "Valero" as used in this Complaint refers to Defendants Valero Energy Corporation, Valero Marketing and Supply Company and Valero Refining and Marketing Company and their related entities Premcor Refining, Premcor Pipeline and Valero PA.

80.    Defendant Valero Marketing and Supply Company is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania 19102, and its principal place of business at One Valero Way, San Antonio, Texas 78249.

Case ID: 140602881

81.    Defendant Valero Refining and Marketing Company is a Delaware corporation with its principal place of business at One Valero Way, San Antonio, Texas 78249.

82.    Defendant Vitol S.A. is a Swiss corporation with its principal place of business at 1100 Louisiana Street, Suite 5500, Houston, Texas 77002.  Defendant Vitol S.A. also does business as Vitol S.A., Inc.  The term "Vitol" as used in this Complaint refers to Defendant Vitol S.A. and its related entity Vitol S.A., Inc.

83.    Defendant Western Refining Yorktown, Inc. is a Delaware corporation with a registered Pennsylvania office c/o CT Corporation System, 1515 Market St., Philadelphia, Pennsylvania  19102, and its principal place of business at 1250 West Washington Street, Suite 101, Tempe, AZ 85281.  Defendant Western Refining Yorktown, Inc. was formerly known as, did business as, and/or is the successor in liability to Giant Yorktown, Inc.  The term "Western Refining" as used in this Complaint refers to Defendant Western Refining Yorktown, Inc. and its related entity Giant Yorktown, Inc.

84.    Each defendant has done, or is doing, business in Pennsylvania at all times material to this Complaint.

85.    At all times material hereto, Defendants Atlantic Richfield Company, Equilon, Exxon, Hess, Houston, Lyondell, Motiva, Shell, Texaco, Total and Valero manufactured and sold MTBE to manufacturers of MTBE gasoline distributed, stored and sold in Pennsylvania.

86.    At all times material hereto, Defendants American Refining, Atlantic Richfield Company, BP America, BP Amoco Chemical, BP Products NA, BP West Coast Products, Chemtura, Chevron, CITGO, Crown Central, Equilon, Exxon, George E. Warren, Hess, Motiva, Shell, Sunoco, Texaco, TMR Company, TRMI-H LLC, Total, and Valero manufactured MTBE used in MTBE gasoline which they manufactured, distributed, stored and sold in Pennsylvania.

29

87.     At all times material hereto, Defendants Coastal Eagle, ConocoPhillips, Duke Energy, Energy Merchant, Marathon, North Atlantic Refining, Premcor, United Refining and Western Refining manufactured and sold MTBE gasoline distributed, stored and sold in Pennsylvania.

88.     At all times material hereto, Defendants Cumberland Farms, El Paso, Getty, GOLP, Lukoil, NuStar, and Vitol distributed, stored and sold MTBE gasoline in Pennsylvania.

89.     Any and all references to defendant, defendants, or a particular defendant by name in this Complaint include all predecessors, successors, parents, subsidiaries, affiliates, divisions and agents of the named defendants.

90.     In committing the wrongful acts alleged in this Complaint, defendants acted in their own right and/or in the capacity of joint venturers, partners, agents, principals, successors-in-interest, surviving corporations, transferees, transferors, controllers, alter-egos, licensees, licensors, patent holders and/or indemnitors of each of the other named defendants.

91.     To the extent any act or omission of any of the defendants is alleged in this Complaint, the officers, directors, agents, employees or representatives of each such defendant committed or authorized each such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of such defendants, and did so while acting within the scope of their duties, employment or agency.

92.     Without limiting the Commonwealth's rights, including its rights to pursue theories of liability other than those enumerated below, on the claims set forth in this Complaint, each defendant is jointly and severally liable to the Commonwealth.  In addition, or in the

Case ID: 140602881

alternative to joint and several liability, market share liability and/or the commingled product theory may be an appropriate theory for liability in this case.

93.     At all times material hereto, defendants manufactured, distributed, sold, controlled or otherwise represented substantially all of the market in Pennsylvania for MTBE and MTBE gasoline.

94.     MTBE and MTBE gasoline are both fungible products and lack traits that would make it possible to identify either product as being manufactured, distributed or sold by a particular defendant.

95.     At all times material hereto, defendants routinely comingled their MTBE and/or MTBE gasoline with the MTBE and/or MTBE gasoline of one or more of the other defendants and produced, distributed or sold such comingled MTBE or MTBE gasoline in Pennsylvania.

96.     As a result of product fungibility and the comingling by defendants, in certain instances of contamination, such as where releases of MTBE and MTBE gasoline have occurred from sites not branded by particular defendants or where records do not exist tracing the products from particular defendants to the sites, it may not be possible to identify the actual source of the MTBE or MTBE gasoline released as having come from a particular defendant other than it was manufactured, distributed, sold or otherwise marketed in Pennsylvania by one or more of the defendants who, as alleged, together represented substantially all of the market in Pennsylvania for MTBE and MTBE gasoline.

97.     Any inability of the Commonwealth to identify the actual source of the MTBE or MTBE gasoline released into the groundwater in particular instances at particular sites is a result of the fungibility of the products, defendants' actions in comingling their products and/or the foreseeable actions of others, and not as a result of any action or inaction by the Commonwealth.

31

Case ID: 140602881

## MTBE AS A GASOLINE ADDITIVE

98.    MTBE is a chemical compound produced by combining methanol, a derivative of natural gas, and isobutylene, a by-product of the gasoline refining process. Because methanol and isobutylene are readily available compounds, MTBE was inexpensive to manufacture. As used in this Complaint, MTBE means not only methyl tertiary butyl ether, but also the degradation byproducts of, and contaminants in, commercial grade MTBE, including tertiary butyl alcohol ("TBA").

99.    TBA is used as a raw material in the production of isobutylene. It is also an intermediate product of MTBE biodegradation, and, as a result, TBA often appears in groundwater where MTBE contamination exists.

100.    Crude oil is converted to petroleum products, including gasoline, at refineries. Many of the defendants have owned and operated petroleum refineries. At the refinery, MTBE, which may have been manufactured by a separate defendant and purchased by a refinery defendant, or may have been manufactured at the refinery itself by a defendant, was blended into gasoline as an octane enhancer and/or as an oxygenator for use in areas of the United States, including Pennsylvania where oxygenated gasoline was sold.

## THE ROUTINE SALE OF COMMINGLED
## GASOLINE IN PENNSYLVANIA

101.    The gasoline sold at a gas station in Pennsylvania, and elsewhere across the nation, is generally not the product of just one refiner. The gasoline present in any particular station's underground storage tanks, whether a branded or non-branded station, is often a commingled product because of how gasoline, after it is manufactured, is transported, stored and distributed prior to reaching a particular gas station for retail sale. Once manufactured by a refiner to certain industry standards, the batch of gasoline is then transported for marketing in

32

different regions of the United States via a network of national and regional pipelines, tank ships and barges. Through these pipelines and other bulk transport means, the gasoline is sent to common storage tanks located at terminals throughout the country. As the gasoline is piped into storage tanks at these terminals, it often becomes mixed or blended together. From the terminals, it is then further transshipped in bulk by pipeline or other transportation means to secondary terminals or depots, where again it is commingled with other refiners' gasoline. From these secondary terminals or depots, gasoline is then taken by truck to gas stations for retail sale.

102.    Defendants added MTBE to their gasoline products as an oxygenate. Oxygenated fuel is very similar to normal gasoline except that it contains a particular additive, termed an oxygenate, that purports to reduce tailpipe emissions of carbon monoxide.

**MTBE IS A PERSISTENT ENVIRONMENTAL CONTAMINANT**

103.    MTBE does not occur naturally in the environment and is not present therein unless introduced by the actions of man.

104.    MTBE is introduced into and contaminates the environment through disposals, deposits, releases, leaks, overfills, spills and evaporative releases (collectively "releases") from a variety of sources, principally releases from gasoline storage and delivery systems.

105.    When released into the environment, MTBE behaves differently from other constituents of concern in gasoline such as benzene, toluene, ethylbenzene and xylene (collectively, "BTEX compounds"). MTBE separates from other gasoline constituents in the presence of moisture. In contrast to the BTEX compounds, MTBE has a strong affinity for water, is easily dissolved and does not readily adhere to soil particles, making it more mobile and

33

Case ID: 140602881

able to migrate great distances from the source of the release. MTBE is more than thirty times more soluble in water than the BTEX compounds in gasoline.

106.    In groundwater, MTBE moves freely at approximately the rate of the water's movement, unlike BTEX compounds, which tend to adhere to soil and/or float on the surface of water. This renders MTBE more difficult to locate and remediate than BTEX compounds.

107.    MTBE can also migrate into subsurface soil regions where it may leach out of these soil regions into nearby groundwater for many years following the initial release.

108.    MTBE is also more persistent than BTEX compounds because it does not readily biodegrade in groundwater. If and when MTBE does degrade in the environment, the process creates other contaminants, including TBA, which are similarly problematic in groundwater.

109.    Because of its chemical and physical characteristics, when gasoline containing MTBE is released into the environment, it migrates farther and faster than gasoline without MTBE through soil and water, penetrates deeply into aquifers, resists biodegradation and results in persistent contamination. As a result, MTBE is and has been more difficult and more expensive to remove from groundwater. Where TBA is also present at a site subject to MTBE remediation, the risks of adverse health and environmental harms are increased, as are the costs to fully remediate the contaminated site.

110.    Given the properties of MTBE and the long history of gasoline releases during distribution, storage, sale and use of MTBE gasoline, widespread MTBE contamination of groundwater from MTBE gasoline was substantially certain and foreseeable by defendants.

111.    MTBE has contaminated, continues to contaminate and threatens to contaminate, the waters of the Commonwealth throughout Pennsylvania.

Case ID: 140602881

### DEFENDANTS' PRODUCTION OF MTBE AS A CHEAP AND PROFITABLE GASOLINE ADDITIVE

112.    In the late 1970s, pursuant to section 211 of the Clean Air Act, 42 U.S.C.A. §

7545 ("the CAA") the United States Environmental Protection Agency ("EPA") registered

MTBE as a fuel additive that did not cause or contribute to the failure of any emission control

device or system. ARCO began commercial production of MTBE in April 1979, less than two

months after the EPA approved MTBE as a blending component of unleaded gasoline.  ARCO

sold MTBE to other oil refiners to be blended into gasoline as an octane enhancer.

113.    As the market for MTBE grew, other oil refiners also began producing MTBE for

blending into gasoline.  In 1979, MTBE production was estimated at approximately 75 million

gallons.

114.    Sometime after 1979, defendants started manufacturing, distributing and/or

selling gasoline with MTBE in concentrations averaging approximately 2% to 4% in order to

boost the octane level in higher grades of gasoline.

115.    By 1985, MTBE production in the United States was estimated at 420 million

gallons per year.  In terms of weight, MTBE ranked 44th among the top 50 chemicals produced

in the United States.  Virtually all of this MTBE was blended into gasoline in concentrations of

up to 11 percent, making MTBE among the largest components of a typical gallon of gasoline.

Overall, MTBE was present in about 10 percent of the nation's gasoline, though it was much

more common in the eastern than the western United States.

116.    When, prior to 1990, the EPA began considering options to reduce air pollution,

the petroleum industry, including some of the defendants, lobbied Congress to adopt the

Reformulated Gasoline Program ("RFG Program") as part of the 1990 Amendments to the Clean

Air Act.  According to the EPA, "The concept of reformulated gasoline (RFG) was originally

35

generated, developed and promoted by industry, not the Environmental Protection Agency ("EPA") or other parts of the federal government."

117.    In the 1990 Amendments to the Clean Air Act, Congress established the RFG Program, as Section 211(k) of the CAA, 42 U.S.C.A. § 7545(k), which mandated the use of reformulated gasoline containing at least 2% oxygen by weight in those areas of the country with the worst ozone or smog problems.  If a particular area of the country, such as a large metropolitan area, was designated as a "non-attainment area" for carbon monoxide ("CO"), the EPA was authorized to direct the area to participate in the RFG Program.

118.    In 1992, in conjunction with the CAA, the EPA initiated the Oxygenated Fuel Program ("Oxyfuel Program"), which required at least 2.7% oxygen by weight in gasoline in certain metropolitan areas to reduce carbon monoxide during the fall and winter months.

119.    Much of the gasoline sold in non-attainment areas under the RFG Program exceeded that program's minimum 2% or 2.7% oxygenate requirements.  MTBE comprised up to 15% of every gallon of gasoline used in those areas.  MTBE gasoline also comprised a significant amount of the gasoline used in areas that were not participating in the RFG Program.

120.    Defendants started shipping high-content MTBE gasoline for sale in certain metropolitan areas in 1992 as part of the Oxyfuel Program.  In or around January 1995, defendants introduced into the stream of commerce MTBE gasoline containing even higher levels of MTBE.

121.    As of 1995, five counties in southeastern Pennsylvania (Bucks, Chester, Delaware, Montgomery and Philadelphia) were required to implement the RFG Program.

122.    At its peak, most if not all gasoline supplied to the Pennsylvania RFG areas had high concentrations (11% to 15%) of MTBE.  In addition, MTBE gasoline containing elevated

36

concentrations of MTBE was often sold at locations throughout Pennsylvania outside of RFG areas at the discretion of defendants.

123.   MTBE was not the only viable oxygenate option available to defendants to achieve higher octane in gasoline.  The Clean Air Act requires the use of some oxygenate, but it does not require that oxygenate to be MTBE.  MTBE became defendants' "oxygenate of choice" because it was the most inexpensive oxygenate to produce and offered defendants the highest profit margin of all available oxygenates.  Defendants could manufacture MTBE from their already available refinery by-products and were therefore not forced to purchase a different available oxygenate, such as ethanol, from a third-party.

124.   Before the 1980s, production and sales totals for MTBE were negligible, but by 1996, MTBE ranked second among all organic chemicals produced in the United States, with virtually the entire production going into gasoline.

125.   Since gasoline containing MTBE at increased levels was introduced, the United States Geological Survey ("USGS") has reported that MTBE is the second most frequently detected volatile organic chemical in groundwater in the United States. MTBE-contaminated wells have been found throughout the United States.  The USGS annually tests the groundwater and has detected MTBE in over 20% of aquifers tested in places where high MTBE-content gasoline was used.

## DEFENDANTS KNEW THAT MTBE IS HARMFUL TO THE ENVIRONMENT AND THAT IT IS DIFFICULT TO REMEDIATE MTBE CONTAMINATION

126.   At all times material hereto, defendants recognized the need to assess and study the long-term risks of MTBE contamination, including the potential health effects of low-level ingestion of MTBE, as well as the difficulties associated with remediating a MTBE release.

37

Information exchanges among defendants as well as their internal documents evidence defendants' awareness of the severe environmental harms arising from MTBE contamination.

127.    By virtue of their tremendous economic power and analytical resources, including the employment of scientists such as hydrogeologists, chemists, engineers and toxicologists, defendants have at all times relevant to this litigation known or been in a position to know the threats which MTBE poses to the environment, including groundwater, and to human health.

128.    In addition, by virtue of defendants' superior knowledge, and/or by virtue of defendants' dissemination of statements regarding the nature and impacts of MTBE, defendants had a duty to disclose the truth and to act in accordance with the truth about MTBE and its ability to contaminate the environment.

129.    Defendants knew at least as early as 1980 of the harmful impact of MTBE and its propensity to contaminate groundwater following a release event.

130.    For example, the American Petroleum Institute ("API") formed a Toxicology Committee in or around 1980.  The API is a trade association that represents the domestic petroleum industry, including defendants, in a broad range of topics. The Toxicology Committee included representatives of various defendants, including Exxon, Mobil, Shell, ARCO, Tosco and Chevron.

131.    API's Toxicology Committee pursued a specific program to study MTBE. Meeting minutes reveal that committee members shared information and repeatedly discussed MTBE's propensity to contaminate groundwater.  The committee specifically acknowledged the need for certain toxicological information due to MTBE's propensity to contaminate groundwater and the likelihood of extensive ingestion of MTBE through drinking water.

Case ID: 140602881

132.    In April 1984, an internal Exxon memorandum raised concerns about manufacturing MTBE gasoline, stating there are "ethical and environmental concerns that are not too well defined at this point." Among these concerns was the "possible leakage of s/s [service station] tanks into underground water systems of a gasoline component [MTBE] that is soluble in water to a much greater extent [than other components of gasoline]." The memorandum proposed that a study be undertaken to thoroughly review the issue with management, including a suggested proviso that any decision to manufacture MTBE gasoline should be reviewed by E. J. Hess, then the "Executive in Charge" of Exxon.

133.    A second internal Exxon memorandum in April 1984 contained another evaluation of the consequences of MTBE use. The memorandum noted that MTBE had much higher solubility than other gasoline components and this could lead to "higher levels of soluble organic contamination when [MTBE] gasoline comes in contact with water."

134.    A third internal Exxon memorandum, prepared in June 1984, reported some field information concerning groundwater contamination with MTBE. The memorandum reveals that Exxon personnel had communications with Shell personnel who had found that MTBE had a very low odor threshold of about 5 ppb, a much lower odor threshold when compared to other constituents of gasoline. This finding, the memorandum observed, is consistent with the recognized characteristics of ethers which "generally have a more objectionable odor than the alcohols or aromatic hydrocarbons." A lower odor threshold requires very high levels of cleanup efficiency to remove a contaminant, in this case MTBE, from groundwater to the point where it could no longer be detected.

135.    An internal ARCO memorandum, dated June 14, 1984, summarized a meeting of the API's "Ad Hoc Committee" on MTBE, which included representatives from those

Case ID: 140602881

defendants then operating as Shell, Texaco, Phillips and ARCO. While this committee focused primarily on toxicological issues involving MTBE, the memorandum noted that "MTBE is a possible contaminant of groundwater, especially in association with leaking gasoline storage tanks." The committee members decided to distribute funds to a sister API committee, the Environmental Biology and Community Health Committee, for the purpose of studying taste and odor issues associated with MTBE.

136.   In August 1984, an internal Exxon memorandum evaluated the consequences of adding MTBE to Exxon's gasoline. The memorandum cautioned that a large-scale addition of MTBE to Exxon's gasoline would likely increase the number of well contamination incidents by a factor of three and increase the cost of cleaning up these incidents by a factor of five. The memorandum cited a number of reasons supporting this conclusion, including:

a)   MTBE would travel farther than the other constituents of gasoline, creating the need to clean up larger plumes;

b)   MTBE's low odor and taste thresholds would force the need to cleanup to more stringent levels; and

c)   the ineffectiveness of carbon absorption clean-up techniques would force greater use of more expensive air-stripping technologies to remediate a MTBE release.

137.   By 1986, various defendants were aware that the EPA had assembled data indicating "a leak rate of 35 percent based on a national survey of underground fuel storage tanks...."

138.   An internal Chevron memorandum, dated May 23, 1986, recognized MTBE's propensity to contaminate groundwater and soil. The memorandum recognized the relatively high water solubility of MTBE, the impracticality of removing it from water with activated

40

carbon, that using air stripping to remove it from water would be difficult, and "that MTBE will migrate more rapidly with the groundwater in the soil." The memorandum recommended that additional testing of MTBE should be conducted.

139.    An internal Chevron memorandum, "Marketing Environmental Concerns Regarding the Use of MTBE in Mogas [Motor Gasoline]," dated June 11, 1986, identified a number of concerns about the potential increased use of MTBE by Chevron. Referencing a cleanup in Maryland where MTBE was a contaminant, as well as an API study of MTBE, the memorandum stated MTBE had "several disturbing properties," including: a relatively high solubility and mobility, low odor and taste thresholds, low rate of biodegradation, and difficulty of removal from water. The memorandum noted concern over the expected increased utilization of MTBE in Chevron gasoline because, "MTBE utilization could increase the cost to clean up leaks at service stations and terminals."

140.    In December 1986, an internal Amoco memorandum addressing potential groundwater research proposals stated that groundwater contamination was the "environmental issue of the decade" and one that had the potential to cost Amoco millions of dollars. One of the proposed research projects discussed was to examine the propensity for MTBE to be absorbed into monitoring-well-casing materials, thus compromising the possibility of an early detection of a gasoline release and the opportunity to minimize remediation costs that early detection provides.

141.    In May, 1987, an internal Exxon memorandum analyzed data on MTBE groundwater contamination in New York State and elsewhere in the region, including laboratory analyses verifying MTBE in water samples from three wells in Harrison, New York and four wells in Port Jefferson, New York. In this report, Exxon stated: "We agree that MTBE in

41

gasoline will dissolve in groundwater at a faster rate than any gasoline hydrocarbon, including

benzene." The report further stated that "[b]ecause of its more frequent occurrence, even when

other hydrocarbons are not found, we feel it is important for you to be aware of MTBE. From an

environmental and engineering standpoint, you may need to be informed of its presence to assist

you in responding effectively to regulatory and remedial requirements."

    142.    An internal 1987 Chevron memorandum raised concerns about the dangers of

MTBE gasoline released into the environment:

> Two considerations impact MTBE. One is potential health risk, and the
> second is increased solubility over normally regulated constituents of interest, i.e.
> benzene, toluene and xylene (BTX).

> MTBE is significantly more soluble in water than BTX. Consequently, the
> dissolved "halo" from a leak containing MTBE can be expected to extend farther
> and spread faster than a gasoline leak that does not include MTBE as one of its
> constituents.

> Further compounding the problem of increased solubility, MTBE is more
> difficult to remove from groundwater using current technology (air shipping or
> carbon adsorption). Because of its lower volatility, MTBE requires more than
> double the air stripping capacity to reach a 95 percent reduction. Removal using
> carbon adsorption is even worse. MTBE breaks through activated carbon four
> times faster than BTX.

    143.    Amoco prepared an internal document, dated July 1, 1992, concerning MTBE,

entitled *Guideline for Handling & Storage of Ethers Used in Gasoline*. The document stated,

"Our new blended gasoline products containing ethers will also require increased levels of

attention, exceeding that associated with our storage and handling of traditional gasoline

products." The warnings contained in the document were intended for Amoco personnel. No

warnings were provided by Amoco, however, to marketers, customers or others handling

gasoline containing MTBE of the extra care required when handling this product.

42

144.   Amoco further emphasized in its July 1, 1992 document that MTBE gasoline required greater care in handling: "The avoidance of environmental incidences and serious environmental damage will require a greater vigilance than might be common practice for non-oxygenated gasolines." The guidelines also recommended the use of double-walled storage tanks with leak detection systems. The information and analysis contained in this document were based, in part, on Amoco's knowledge of MTBE's properties (flammability, solubility, low rate of biodegradation) and Amoco's experience cleaning up an MTBE release at one of its terminals.

145.   In 1992, an internal Shell white paper described the dangers of MTBE once released into the environment. The document stated that MTBE is nearly 25 times more soluble than benzene and, therefore, an MTBE plume emanating from a gasoline spill was expected to move faster and farther than a benzene plume. The white paper indicated that MTBE does not biodegrade in the subsurface environment. It further indicated that MTBE has a low odor and taste threshold, and that "at many locations odor and taste criteria may determine clean-up levels." The white paper cautioned:

> MTBE has had impact on groundwater management at only a few Shell marketing terminals and service stations to date. However, as the usage of this oxygenate begins to increase, a stringent clean-up criteria for MTBE will become adopted in more states [and] we should anticipate increased concerns over how its release to groundwater is managed.

146.   A February 2002 Shell "MtBE Policy Review" document noted with respect to warnings regarding MTBE:  "At present little, if any, information is supplied to our customers on the environmental aspects of storing gasoline that contains MtBE....Some customers could claim that, in the absence of such information or vetting, we are responsible for their remediation costs...."

43

147.   Hess discussed in a 1998 internal document the reasons that MTBE created environmental risks and then stated "Releases involving gasoline which contains MTBE pose a significantly greater cost to remediate and have greater potential for offsite migration. As such, these facts underscore the importance of release prevention and rapid leak detection programs."

148.   Similarly, Texaco in a 1998 document specifically discussed the need to handle gasoline containing MTBE differently at service stations.

149.   In 1994, Amoco determined to utilize MTBE rather than ethanol as its oxygenate in the U.S. east and south. Amoco elected to do so despite the information in its internal memoranda that MTBE was highly water soluble, extremely mobile in groundwater, would migrate quickly off site from service station release sites, was not biodegradable under natural conditions and, as a result, would foreseeably cause significant environmental contamination at hundreds of its service stations. Amoco noted in its memoranda that its own studies showed "MTBE has nil biodegradability and moves with groundwater quickly" and "poses major estimated costs for accidental discharges of gasoline with MTBE." On the other hand, ethanol, a competitor oxygenate, was found by Amoco to be "easily biodegraded" and to "present no more estimated costs [to remediate] than gasoline itself."

150.   Amoco estimated at the time that the annual environmental remediation costs that would result from the use of MTBE in its gasoline would be, as of 2002, $183 million to $211 million per year compared with $33 million if non-oxygenated gasoline was used. However, in apparent reference to indemnification programs like the Commonwealth's USTIF program where public funds could be tapped to pay for cleanup of Amoco's MTBE contamination, Amoco noted that "state reimbursements program will reduce remediation costs by 10%." Accordingly, despite recognizing internally the harmful effects of MTBE on the environment and concluding

44

that using ethanol would have no impact on the environment, Amoco chose MTBE as its gasoline additive to meet its oxygenate requirements for RFG in the east and south.

151.    In January 1996, a CITGO memorandum summarized a conference call on MTBE among members of the API's Soil and Groundwater Technical Task Force. It reported that "[t]he consensus of the API member company remediation experts is that MTBE poses a serious future remediation concern." This consensus was based, in part, on the fact that MTBE did not naturally biodegrade and that the concentration of MTBE in gasoline would increase to the range of 12% to 16%, up from the earlier concentrations of 1% to 2%.

152.    An internal Shell document prepared in June 1997 shows that Shell was aware at least as of that time that remediating a MTBE spill would be difficult:

> MTBE is relatively quite soluble in water (compared to other components in Gasoline, like BTEX), and it moves essentially with the ground water, thus MTBE tends to "lead the plume" whenever there is a gasoline spill or leak. MTBE also has a very low biodegradation potential, which makes it more difficult to remove from ground water than other gasoline components such as BTEX.

153.    At all times relevant to this litigation, defendants knew or should have known of the substantial harm caused by expected MTBE gasoline releases and the substantial difficulty of remediating groundwater and soil contaminated by MTBE.

## DEFENDANTS PUBLICLY DEFENDED AND PROMOTED MTBE DESPITE THEIR KNOWLEDGE OF THE ENVIRONMENTAL RISKS POSED BY MTBE RELEASES

154.    Defendants defended and promoted the use of and distributed MTBE and/or MTBE gasoline in Pennsylvania when they knew or should have known that MTBE releases from various gasoline storage and delivery systems were likely, and that such releases could and would pollute the waters of the Commonwealth.

45

Case ID: 140602881

155.    Further, defendants defended and promoted the use, marketing and distribution of MTBE and/or MTBE gasoline when they knew or should have known the unique and difficult problems to remediate MTBE contamination from groundwater and soil, and which problems could and would increase the costs and time associated with such remediation.

156.    In 1986, Peter Garrett and Marcel Moreau of the Maine Department of Environmental Protection authored a paper titled "Methyl Tertiary Butyl Ether as a Groundwater Contaminant" (the "Garrett Report"). Based upon the authors' analysis of approximately 30 Maine wells contaminated with MTBE, the report stated that: (a) groundwater contaminated with MTBE is difficult to remediate; (b) MTBE is more soluble than the other constituents of gasoline and therefore a plume of MTBE in groundwater will be more extensive than the plume of the other gasoline components; and (c) MTBE has a distressing "terpene-like" odor in low concentrations. The Garrett Report's authors recommended that MTBE be banned as a gasoline additive, or, at least, be stored in double-contained facilities.

157.    The Garrett Report authors planned to present their report at proceedings of the "Petroleum Hydrocarbons and Organic Chemicals in Ground Water Conference," in November 1986. This conference was jointly sponsored by the National Well Water Association and the API.

158.    Before its publication and public presentation, a draft of the Garrett Report was widely circulated in the oil industry. Oil industry representatives, including many of the defendants, joined forces to pressure the authors to radically revise their negative conclusions and recommendations about MTBE, and/or to discredit the report in order to protect and maintain MTBE's competitive advantage as a gasoline additive.

46

159.    On or about December 23, 1986, a staff member of the API's Groundwater

Technical Task Force ("GTTF") forwarded the Garrett Report to other GTTF members,

including representatives of Shell and Exxon. Comments from GTTF members concerning the

report culminated in a letter from the API to the National Well Water Association. The letter

attacked the Garrett Report:

> The [Garrett Report] authors' "recommendations" that MTBE … be either banned
> as gasoline additives or require double-lined storage is clearly a policy statement
> and not an objective credible scientific conclusion. Further, data presented in this
> paper as well as those generated by ongoing API research indicate that such a
> policy is reactionary, unwarranted, and counter-productive.

160.    Amongst themselves, however, defendants knew their criticisms of the Garrett

Report were inaccurate and misleading. For example, ARCO, in a communication to others

within the oil industry stated in a letter dated February 4, 1987, "we don't have any data to refute

comments made in the paper that MTBE may spread farther in a plume or may be more difficult

to remove/clean up than other gasoline constituents."

161.    In 1986, the federal Interagency Testing-Committee ("ITC"), established pursuant

to the Toxic Substances Control Act, recommended testing and review to assess MTBE's health

and environmental risks. The ITC characterized MTBE as having relatively high water solubility,

and stated that MTBE's persistence in groundwater following spills was unknown but that it was

likely not "to be readily biodegradable." The ITC recommended chemical fate monitoring of

MTBE to determine the risk MTBE poses to the environment. The ITC also recommended

additional medical testing of MTBE and invited written comments. The oil industry, including

defendants, mobilized to convince the EPA that additional testing of MTBE was not needed.

162.    On or about December 12, 1986, ARCO, on behalf of and/or with the approval of

defendants, responded to the 1986 ITC Notice in an effort to derail further testing of MTBE.

Case ID: 140602881

ARCO's comments included a critique of the information review of MTBE on which the ITC

had relied. ARCO's submission stated that its "critique of the report revealed that some

erroneous assumptions had been made that cause the hazards of MTBE to be seriously

overestimated." In further comments to the EPA, ARCO also stated:

> Characteristics - Moderate water solubility is reported. However, an ARCO
> Technical Bulletin states that "MTBE is only slightly soluble in water..."

<p style="text-align:center">* * *</p>

> The ... report states that potential environmental exposure is "high." This
> conclusion is not supported by the available information.

<p style="text-align:center">* * *</p>

> Exposure from accidental spills of MTBE could occur, but should be regarded as
> a minimal possibility. The closed nature of the manufacturing and transportation process
> reduces worker exposure and product loss. Training and safety programs also lower the
> possibility of accidental spills. Many current programs at EPA and industry are underway
> to monitor and reduce the possibility of gasoline loss from leaking underground storage
> tanks ... MTBE losses would be extremely small from this source.

<p style="text-align:center">* * *</p>

VI.    Environmental Information

> As has been reportedly stated, environmental entry would not occur in every stage
> of the gasoline marketing chain.... Environmental entry of MTBE from this course would
> be considerably less than the report indicates.

> MTBE is only slightly soluble so environmental fate projections based on this
> assumption will not be correct.

163.    ARCO's comments to EPA in response to the ITC Notice, which were made with

other defendants' explicit or implicit approval, were false and misleading when made,

improperly downplayed the risks of MTBE contamination of groundwater and omitted material

facts known to ARCO and other defendants at the time.

<p style="text-align:center">48</p>

Case ID: 140602881

164.    On or about December 17, 1986, EPA held a Public Focus Meeting to hear comments on the need for additional testing of MTBE.  ARCO and Exxon made a presentation supporting the industry position that additional medical testing of MTBE was unnecessary.

165.    In or around early 1987, a multi-company task group was formed by defendants, known as the "MTBE Committee."  This committee's express purpose, as set forth in a written agreement, was "addressing the environmental, health, safety, legislative and regulatory issues concerning MTBE of importance to the public and the producers and users of MTBE." Defendants' MTBE Committee included representatives of Defendants ARCO, BP Amoco, Chevron, CITGO, Exxon, Shell and Sunoco, among others industry companies.  Neither EPA nor any government entities were included in the Committee.

166.    On January 29, 1987, the MTBE Technical Subcommittee, a subcommittee of defendants' MTBE Committee, held its first meeting to coordinate their "plan of attack" on the 1986 ITC recommendations.

167.    Although defendants were aware that EPA was interested in obtaining more information about MTBE in groundwater, defendants were not forthcoming in their responses to EPA and failed to fully and fairly disclose what they knew about MTBE's environmental and health hazards.

168.    On or about February 12, 1987, ARCO responded to the EPA's request for information about "data gaps" concerning MTBE's environmental and health effects, stating:

> Item D requests more information on the presence and persistence of MTBE in groundwater. We are not aware of any incidents where MTBE contaminated groundwater at manufacturing facilities. Where gasoline containing MTBE is stored at refineries, terminals, or service stations, there is little information on MTBE in groundwater. We feel there are no unique handling problems when gasoline containing MTBE is compared to hydrocarbon-only gasoline.

ARCO knew these statements were false and misleading.

49

Case ID: 140602881

169.    On or about February 27, 1987, defendants' MTBE Committee submitted written comments to the EPA in an improper effort to deter it from requiring additional health and environmental testing of MTBE. The information provided by defendants was misleading and false. Defendants' information to the EPA falsely represented, *inter alia*, that MTBE is only slightly soluble in water, that potential environmental exposure is not high, and that MTBE has excellent biodegradation characteristics. The defendants' MTBE Committee's statement to EPA further falsely stated:

> there is no evidence that MTBE poses any significant risk of harm to health or the environment, that human exposure to MTBE and release of MTBE to the environment is negligible, that sufficient data exists to reasonably determine or predict that manufacture, processing, distribution, use and disposal of MTBE will not have an adverse effect on health or the environment, and that testing is therefore not needed to develop such data. Furthermore, issuance of a test rule requiring long term chronic testing will have a significant adverse environmental impact.

170.    Defendants consistently misstated to EPA the environmental benefits of MTBE while understating or concealing its serious environmental hazards, which doing so, defendants knew was false and misleading. By such actions defendants intended to a) forestall public scrutiny of their decision to increase concentrations of MTBE in gasoline, and, at the same time, b) avoid or obstruct health and environmental safety research that would have revealed what defendants already knew of MTBE's harmful effects on groundwater.

171.    In April 1987, George Dominguez, a member of defendants' MTBE Committee, gave a presentation at an oil industry event, the Conference on Alcohols and Octane. Mr. Dominguez represented during his presentation that "MTBE removal from groundwater is consistent with commercial experience. MTBE gasoline spills have been effectively dealt with."

Case ID: 140602881

These statements were false and misleading in view of what the MTBE Committee members knew or had reason to know about MTBE.

172.     Although defendants' MTBE Committee represented to the EPA that the Committee was going to "address environmental issues related to MTBE by a) collecting data from member companies and other sources, and b) sponsoring programs to develop data unavailable from other sources," the Committee did no such thing and disbanded approximately one year after achieving its goal of limiting testing.

173.     In April 1987, ARCO, a major manufacturer of MTBE at the time, published a bulletin describing the "proper" handling of MTBE during storage and shipping, including material compatibility and safety information. The document stated that "[g]asoline containing MTBE is handled in the same manner as hydrocarbon-only gasoline. There are no extraordinary handling or safety precautions." These statements were false and misleading when made and ARCO knew they were false.

174.     In February 1993, Lyondell, which at this time was the world's leading producer of MTBE, published a Product Safety Bulletin describing Lyondell's recommendations for receipt, unloading, storage, transfer, processing, and disposal of neat MTBE.  While indicating that the water solubility of neat MTBE made some special handling necessary, the Bulletin asserted that "Blended gasoline that contains lower levels of MTBE is generally handled in the same manner as hydrocarbon-only gasoline and requires no extraordinary precautions." These statements about MTBE gasoline were false and misleading when made and Lyondell's knew they were false.

175.     At all times relevant herein, Defendant Lyondell with full knowledge of the facts, ratified, adopted and continued the acts, omissions and effects of ARCO set forth herein by

51

hiring and promoting employees involved in the misrepresentation; by failing to disclose or correct the deliberate misrepresentations made by its predecessor; by failing to disclose the true facts about MTBE as required by the Toxic Substances Control Act, and by continuing to knowingly make the same false statements about MTBE previously made by ARCO.

176.    As widespread MTBE groundwater contamination began to appear, defendants further acted to conceal or obfuscate the true facts of the dangers that MTBE posed to the environment. For example, in April 1996, the Oxygenated Fuels Association ("OFA"), a captive entity of defendants, published and distributed a pamphlet entitled "Public Health Issues and Answers." The pamphlet falsely stated: "On rare occasions, MTBE has been discovered in private drinking water wells where the source of MTBE has been attributed to leaks from nearby underground storage tanks." OFA's pamphlet further expressed confidence that federal regulations and industry practices made such contamination largely a thing of the past. These statements were false and misleading when made and OCF and its defendant members knew or had reason to know they were false.

177.    Through this kind of misleading communications, defendants failed to properly, adequately and timely alert and inform persons and entities engaged in the storage, transport, handling, retail sale, use, and responding to spills of such gasoline (hereinafter referred to as "downstream handlers"), intended users and consumers and the general public to the unapparent environmental hazards and dangers posed by MTBE and omitted and concealed information required to minimize such dangers.

178.    A September 15, 1999 report by a special EPA Blue Ribbon Panel stated that MTBE is found in 21% of ambient groundwater tested in areas where MTBE is used in RFG areas, that MTBE "has caused widespread and serious contamination," and EPA's review of

Case ID: 140602881

existing information on contamination of drinking water resources by MTBE "indicates substantial evidence of a significant risk to the nation's drinking water supply."

179.    In its September 15, 1999 report, the EPA Blue Ribbon Panel recommended substantial reductions in the use of MTBE and some Panel members recommended that it be eliminated entirely.  The Panel also recommended accelerating assessments of drinking water protection areas required under the Safe Drinking Water Act, particularly in those areas where high MTBE-content gasoline was used. The Panel further recommended "a nationwide assessment of the incidence of contamination of private wells by components of gasoline" and "regular water quality testing of private wells."

180.    In making MTBE their oxygenate of choice, defendants decided to forego safer oxygenates, such as ethanol.  In fact, only belatedly after massive MTBE environmental harm had already occurred, did some gasoline sellers publicly acknowledge that MTBE is neither environmentally safe nor necessary. Getty Marketing, for example, placed full page ads in the New York Times on October 13, 1999, that stated:

> Protecting our water supply means making a commitment to doing business in environmentally-friendly ways. That's what we're doing at Getty. We have replaced MTBE with ethanol in our gasoline because it helps clean the air without harming our drinking water.

### DEFENDANTS BREACHED THEIR DUTIES TO PLAINTIFF AND THE GENERAL PUBLIC CONCERNING THE PROPER, SAFE MANAGEMENT AND USE OF MTBE AND MTBE GASOLINE

181.    Defendants, who promoted the use of MTBE gasoline for its purported environmental benefits, knew or should have known of the grave harm and threat to public health, safety and welfare and the environment represented by the proliferating use of MTBE, including, but not limited to: a) widespread contamination of surface and groundwater with MTBE; b) the rendering of groundwater unfit, unpalatable and unusable for consumption; and c)

53

the increased costs to the Commonwealth and others in addressing MTBE contamination of waters of the Commonwealth.

182.    At all times material, the defendant manufacturers of MTBE sold to the defendant manufacturers of MTBE gasoline knew the MTBE being sold would be used by the gasoline manufacturers to compound and manufacture MTBE gasoline and were aware of the peculiar environmental risks involved in such use of MTBE.  These MTBE manufacturer and seller defendants therefore had a non-delegable duty to inform and warn downstream handlers of MTBE gasoline of the peculiar risks and necessary precautions associated with the product. Each MTBE manufacturer and seller defendant breached these duties.

183.    Defendants, as the manufacturers, refiners and suppliers of MTBE and gasoline containing MTBE, had a duty and breached their duty to evaluate and test MTBE adequately and thoroughly to determine its environmental impact and transport characteristics, including the potential harm to human health, comfort, safety and welfare, before they produced and sold MTBE and gasoline containing MTBE.

184.    Defendants had a duty and breached their duty to minimize the environmental harm caused by MTBE and/or gasoline containing MTBE.

185.    Defendants had a duty and breached their duty to take precautions, including warnings and/or instructions, necessary to ensure that MTBE gasoline was properly and safely used, transported, stored and dispensed and that all necessary measures to promptly detect, contain, abate and respond to spills and leaks were instituted.

186.    Defendants failed to adequately evaluate, test, store, warn, mitigate or otherwise ensure that MTBE gasoline would not contaminate waters of the Commonwealth.

54

187.    As a direct, indirect and proximate result of defendants' failures and breaches of duties as aforesaid, MTBE was released into the environment, causing, and threatening to cause, widespread contamination of the waters of the Commonwealth.

188.    In addition to their negligent and/or reckless conduct alleged herein, defendants intentionally failed to warn downstream handlers and intended users and consumers as to the danger that defendants knew MTBE presented to the environment and to public health, safety and welfare, and which dangers were not known and readily apparent to the general public. Defendants also engaged in separate and joint activity to mislead the public regarding these same dangers.

## DEFENDANTS KNEW THAT MTBE RELEASES WOULD OCCUR IN PENNSYLVANIA FROM GASOLINE STORAGE AND DELIVERY SYSTEMS

189.    The widespread problems of gasoline releases from leaking gasoline storage and delivery systems were well known to defendants prior to the introduction of MTBE and MTBE gasoline into Pennsylvania.

190.    At all times material hereto, defendants knew, or reasonably should have known, that gasoline storage and delivery systems in Pennsylvania and elsewhere a) generally suffered significant and widespread leaks and/or failures, and b) released gasoline products into the environment, including into groundwater.

191.    Certain defendants obtained first-hand knowledge and experience of the these leaks and releases because they owned and operated individual gasoline stations with leaking gasoline storage and delivery systems, including gasoline stations in Pennsylvania and/or exercised control over such gasoline stations through a variety of means, including written agreements, inspection rights, prescribing certain procedures and operating practices, prescribing

55

specifications for products, conditions on sale of branded goods, agreements obligating such stations to acquire, store and sell gasoline containing MTBE, and training.

192.     For most of the 20th century, the petroleum industry had an indifferent attitude towards small-volume gasoline leaks and spills. The components of traditional gasoline are relatively insoluble and biodegrade fairly readily.  Because of these characteristics they rarely caused significant health, financial and/or remediation problems to defendants and low-level gasoline (without MTBE) releases were tolerated and accepted as part of normal business practices.  Delivery spills were thus common, maintenance activities frequently involved spilling fuel, and inventory control, which defendants were aware or had reason to know could not detect small leaks, was generally considered to be adequate for leak and release detection. Because the solubility of the gasoline constituents was quite low generally, relatively few traditional gasoline contaminants made their way into the groundwater.

193.     The introduction of MTBE into gasoline, however, changed things dramatically and meant that small or minor types of leaks and spills could and did significantly impact groundwater.  Even a small release of MTBE gasoline could result in MTBE concentrations in groundwater that were above taste and odor threshold levels, rendering the water unusable without expensive treatment.

194.     Downstream handlers and intended users and consumers had been releasing gasoline into the environment for decades.  These people continued to routinely spill or release gasoline after MTBE was added to gasoline as an additive because they did not know and were not told by defendants they needed to do anything different. Protection of groundwater and human health, however, required that downstream handlers and intended users and consumers needed to receive instructions and information alerting them that routine behavior was not

56

suitable for handling MTBE gasoline and that even very small releases of MTBE or MTBE gasoline could lead to harmful consequences to the environment and human health.

195.   Among other things, defendants knew, or reasonably should have known, at the time they were utilizing and promoting MTBE as a gasoline additive that:

a)   the gasoline distribution and retail system throughout Pennsylvania contained leaking gasoline storage and delivery systems;

b)   large areas of Pennsylvania were and are highly dependent upon groundwater as the source for domestic water; and

c)   release of MTBE into the environment would be an expected consequence of marketing and placing MTBE and MTBE gasoline into the stream of commerce, especially in the absence of precautionary measures necessary to prevent or mitigate such releases, which measures defendants failed to take.

196.   Defendants also knew, or reasonably should have known, that to a greater extent than the other constituents of gasoline MTBE, when released into the environment, would move great distances, mix easily with water, resist biodegradation, render drinking water unpalatable and non-potable, and require significant expenses to define the extent of , monitor, treat and remediate the contamination.

197.   Despite knowing the risk of groundwater contamination posed by MTBE, and despite the availability of reasonable alternatives and risk minimization or elimination, including adequate warnings or instructions, defendants failed to warn or instruct retailers, customers, other downstream handlers, intended users and consumers and the public on the dangers of and/or the proper handling of MTBE and MTBE gasoline.  Defendants further failed to take appropriate precautionary measures to prevent or mitigate MTBE contamination.  Instead,

57

defendants falsely promoted MTBE and MTBE gasoline as environmentally sound products suitable for widespread use.

198.    Manufacturers of hazardous substances typically address Occupational Safety and Health Administration ("OSHA") hazard communication requirements by providing material safety data sheets ("MSDSs") to their customers. Defendants did not adequately address MTBE in their MSDSs. The public position of defendants was that MTBE gasoline could be handled just like traditional gasoline and that the traditional standard-of-care for gasoline without MTBE was adequate for MTBE gasoline.

199.    Among other things, these false representations by defendants provided defendants' MTBE gasoline with an unfair competitive advantage and with greater profit margins over other gasolines in the marketplace utilizing alternative safer, but more expensive, octane and oxygenation additives.

200.    Moreover, defendants engaged in separate and/or joint activities to suppress, conceal, downplay and/or discredit studies and other information regarding the hazards of MTBE.  Defendants' wrongful conduct in this regard, among other things, proximately caused

   a)    a dramatic increase in the use and corresponding presence of MTBE gasoline in Pennsylvania;

   b)    the consequent contamination and damage to the waters of the Commonwealth as and when inevitable releases of MTBE gasoline occurred;

   c)    substantial economic losses and damages incurred by the Commonwealth in its efforts to define the extent of , monitor, treat and remediate the contamination; and

   d)    negative impact upon competitive, safe alternative oxygenate additives such as ethanol.

58

201.    Defendants knew at all times material that it was substantially certain that their acts and omissions as set forth herein would threaten public health, cause extensive contamination of groundwater and drinking water supplies and otherwise cause the injuries described herein.   Defendants acted or failed to act as aforesaid knowingly, wilfully and fraudulently, maliciously and/or wantonly with conscious disregard of plaintiff's rights, public health and safety and probable injury to the environment, and/or with gross negligence.

## THE IMPACT OF MTBE AND MTBE GASOLINE ON THE WATERS OF THE COMMONWEALTH

202.    At all times relevant to this action, despite their knowledge that contamination of waters of the Commonwealth with MTBE was the inevitable result of their conduct, defendants continued to refine, market, promote, and supply MTBE gasoline in the Commonwealth.

203.    Reformulated gasoline containing significant quantities of MTBE was sold on a virtually universal basis throughout Pennsylvania beginning in the 1990s as a result of defendants' efforts.

204.    MTBE contamination is associated with all transportation, storage and use of MTBE gasoline.

205.    MTBE contamination has injured, and continues to injure and threaten, the waters of the Commonwealth, and the health, safety and welfare of the citizens of Pennsylvania on a wide-spread and substantial basis throughout the state.

206.    MTBE is a "regulated substance" under Commonwealth environmental statutes, including under 35 P.S. §§ 6021.101 – 6021.2105 and 35 P.S. §§ 6026.101 – 6026.909.

207.    At all times material hereto, the Commonwealth has established a Statewide Health Standard ("SHS") for MTBE at 20 parts per billion ("ppb") for groundwater in most aquifers in Pennsylvania.

Case ID: 140602881

208.   Since its introduction into gasoline, MTBE has been found in groundwater throughout Pennsylvania in varying significant concentrations as high as 2,100,000 ppb. MTBE contamination has been found in groundwater in every county in Pennsylvania.

209.   Pennsylvania relies heavily on groundwater for public drinking-water supplies. There are nearly one million private and public water supply wells in Pennsylvania. As of 2003, the combined populations served by (1) community systems with groundwater as a primary source of drinking water, (2) community systems with at least one groundwater source, and (3) private on-lot wells accounted for nearly half of the population of Pennsylvania. In 2005, about 210 million gallons of groundwater were used per day for public drinking-water supply, or nearly 15 percent of all water used for public drinking water in Pennsylvania.

210.   Under Pennsylvania law, all groundwater in aquifers is presumed to be used or currently planned for human use, unless determined otherwise by DEP. 25 Pa. Code § 250.303.

211.   MTBE has been found throughout the Commonwealth in varying concentrations and at varying times in both public water supply wells and private domestic wells.

212.   The Commonwealth and its citizens are entitled under law to clean groundwater uncontaminated by MTBE.

213.   Whether or not previously remediated to levels at or below the SHS of 20 ppb, groundwater that contains MTBE is and remains damaged as a result of defendants' acts and omissions as alleged herein.

214.   Since the inception of the USTIF program in 1994, there have been approximately 3,400 documented releases of gasoline into the environment from USTIF indemnified facilities. Releases have occurred in every county in Pennsylvania. A substantial portion of these gasoline releases have involved MTBE gasoline and resulted in MTBE contamination of groundwater and

60

the expenditure of significant funds by the Commonwealth to define the extent of, monitor, treat

and remediate MTBE contamination.  Such releases of MTBE gasoline include by way of

example, but are in no way limited to, the following:

1)    Release detected on or about August 11, 1999 of MTBE gasoline from Maloy Amoco Station located at 101 Altman Road, Jeannette, PA (Westmoreland County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,368,731.76;

2)    Releases detected on or about November 1998 and March 23, 2001 of MTBE gasoline from Neffsville Sunoco Station (formerly Neffsville Amoco Station) located at 2548 Lititz Pike, Borough of Neffsville (Lancaster County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,000,000.00;

3)    Release detected on or about May 22, 2001 of MTBE gasoline from the Five Gables Amoco station located at 5869 Business Route 220, Cessna, PA (Bedford County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,089,578.44;

4)    Release detected on or about May 14, 1996 of MTBE gasoline from the Route 119 Dunbar Amoco located at 1809 University Drive, Dunbar, PA (Fayette County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,009,535.51;

5)    Release detected on or about August 2, 1999 of MTBE gasoline from the Market Street BP located at the corner of Market Street & Loveland Avenue, Kingston, PA (Luzerne County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,008,938.08;

6)    Release detected on or about February 13, 2006 of MTBE gasoline from the Ruff Creek BP located at 720 Washington Road, Prosperity, PA (Greene County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $871,596.35;

7)    Release detected on or about October 1995 of MTBE gasoline from the Center Square CITGO Station, 1273 DeKalb Pike, Center Square, PA (Montgomery County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,000,000.00;

8)    Release detected on or about February 1996 of MTBE gasoline from the Rick's CITGO station, 87 N. Main Street, Mansfield, PA (Tioga County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $836,152.32;

Case ID: 140602881

9)   Release detected on or about January 6, 1998 of MTBE gasoline from the Pikes Creek CITGO station, SR 118 & SR 29, Pikes Creek, PA (Luzerne County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,000,000.00;

10)   Release detected on or about May 28, 2002 of MTBE gasoline from the Mt. Cobb CITGO station, Route 348 & Route 247, Lake Ariel, PA (Lackawanna County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $960,033.66;

11)   Release detected on or about November 5, 1998 of MTBE gasoline from the Jim's Food Rite/Coastal Mart #7430, State Route 54, Turbotville, PA (Northumberland County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,076,165.47;

12)   Release detected on or about October 17, 2001 of MTBE gasoline from the Fairway Coastal station, 320 South Chester Road, Wallingford, PA (Delaware County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $378,268.10;

13)   Release detected on or about December 16, 2002 of MTBE gasoline from the Honeybrook Coastal station, 2500 Conestoga Avenue, Honey Brook, PA (Chester County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $880,704.43;

14)   Release detected on or about December 15, 1993 of gasoline containing MTBE from the Ron Matz Exxon Station (PADEP Facility ID 25-3638), 9088 W. Main Road, McKean Borough, PA (Erie County), resulting in investigation, personnel and filtration costs paid to date by the Commonwealth in excess of $400,000. In 2009, the local community obtained a $4.5 million grant and $700,000 loan from PENNVEST to fund a project to extend water supply lines to the affected area;

15)   Release detected on or about December 12, 1994 of MTBE gasoline from the Ted Sobek's Exxon station, 3091 South Pittsburgh Road, Star Junction, PA (Fayette County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $981,706.44;

16)   Release detected on or about October 31, 1995 of MTBE gasoline from the Bitner's Exxon station, 201 Susquehanna Avenue, Lock Haven, PA (Clinton County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $989,119.50;

17)   Release detected on or about February 14, 2000 of MTBE gasoline from the Lehigh Marts Exxon station, Route 313 & Route 113, Perkasie, PA (Bucks County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,244,419.76;

Case ID: 140602881

18)     Release detected on or about March 1994 of MTBE gasoline from the Heichel Gulf station, 82 South Main Street, Mansfield, PA (Tioga County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,000,000.00;

19)     Release detected on or about November 25, 1998 of MTBE gasoline from the Bowers Gulf station, 12 East Avenue, Wellsboro, PA (Tioga County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $868,849.45;

20)     Release detected on or about October 7, 1996 of MTBE gasoline from the Hess Service Center, Ltd., 801 Route 15 North, Dillsburg, PA (York County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,305,959.46;

21)     Release detected on or about May 1, 1999 of MTBE gasoline from the Hess Station #38411, Route 4037, Fleetwood, PA (Berks County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $761,485.85;

22)     Release detected on or about September 9, 1995 of MTBE gasoline from the Hilltop Sunoco, State Route 6 & I-84, Milford, PA (Pike County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,000.000;

23)     Release detected on or about May 30, 2002 of MTBE gasoline from the Flinn's Mobil station, 1910 Baltimore Pike, Gettysburg, PA (Adams County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,280,787.80;

24)     Release detected on or about February 3, 2005 of MTBE gasoline from the R.P. Hoffman Mobil station, Route 940 & Long Pond Road (adjacent to Interstate 380), Pocono Summit, PA (Monroe County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $2,665,996.98;

25)     Release detected on or about May 22, 1998 of MTBE gasoline from the Reese's Shell station, 10 North Railroad Street, Myerstown, PA (Lebanon County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $984,979.88;

26)     Release detected on or about March 13, 2001 of MTBE gasoline from the Holiday Shell station, 8030 Perry Highway, Erie, PA (Erie County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $711,863.69;

27)     Release detected on or about October 17, 2007 of MTBE gasoline from the Bath Shell Shi Nickel station, 7857 Bethlehem-Bath Pike, Bath, PA (Northampton County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $715,702.28;

28)     Release detected on or about April 27, 1994 of MTBE gasoline from the Campbell Sunoco Ultra Service Center, 1111 Clay Pike, North Huntington, PA (Westmoreland

Case ID: 140602881

County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $2,000,000.00;

29)    Release detected on or about January 13, 1998 of MTBE gasoline from the former Sunrise Sunoco station, 1479 Old Brodhead Road, Monaca, PA (Beaver County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $945,924.17;

30)    Release detected on or about February 1, 1999 of MTBE gasoline from the Toto's Sunoco Food Market, 1138 E. Susquehanna Avenue, Philadelphia, PA (Philadelphia County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $933,411.92;

31)    Release detected on or about February 4, 1999 of MTBE gasoline from the Bill's Texaco Station, 5510 Allentown Boulevard, Harrisburg, PA (Dauphin County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,015,606.17;

32)    Release detected on or about August 19, 1999 of MTBE gasoline from the Dublin Texaco Exxon station, Dublin, PA (Bucks County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,000,000.00;

33)    Release detected on or about March 3, 2004 of MTBE gasoline from the Pipersville Texaco station, 6816 Easton Road, Pipersville, PA (Bucks County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,396,855.79;

34)    Release detected on or about October 14, 1999 of MTBE gasoline from the Starbrick BP station, 2609 Pennsylvania Avenue W., Warren, PA (Warren County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $445,625.88;

35)    Release detected on or about March 13, 1995 of MTBE gasoline from the Bruno & Sons Service Station, 500 East Lancaster Avenue, Downington, PA (Chester County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,481,746.09;

36)    Release detected on or about August 1, 1995 of MTBE gasoline from the Marshalls Creek Service Station, Business Route 209 & Route 402, Marshalls Creek, PA (Monroe County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,504,800.49;

37)    Release detected on or about February 27, 1996 of MTBE gasoline from the Automation Service Center, 110 Revere Boulevard, Reading, PA (Berks County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $2,985,282.53;

Case ID: 140602881

38) Release detected on or about February 26, 1996 of MTBE gasoline from the Nichols Plaza station, 1103 Pennsylvania Avenue West, Warren, PA (Warren County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $945,274.00;

39) Release detected on or about December 6, 1995 of MTBE gasoline from the Lawrenceville Downtown Time Saver station, Route 49 & Route 15, Lawrenceville, PA (Tioga County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $898,730.96;

40) Release detected on or about October 9, 1996 of MTBE gasoline from the Fisher's Service, Inc. station, 335 N. Main Street, Butler, PA (Butler County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $808,889.77.

41) Release detected on or about February 25, 1997 of MTBE gasoline from the Dye's Service station, 2295 Mercer Road, Stoneboro, PA (Mercer County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $946,039.29.

42) Release detected on or about February 20, 1997 of MTBE gasoline from the former Penns Pantry CE Schneck, 2965 Lebanon Road (Route 72), Manheim, PA (Lancaster County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $2,751,455.50.

43) Release detected on or about July 20, 1998 of MTBE gasoline from the Matus Service station, 2453 Old Rt. 18, Wampum, PA (Lawrence County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,927,745.75.

44) Release detected on or about February 22, 1999 of MTBE gasoline from the Bob Nolan's Auto Service station, 2464 Bristol Pike, Bensalem, PA (Bucks County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,827,373.50.

45) Release detected on or about June 10, 1998 of MTBE gasoline from the Kicks Convenience Store, 220 Lake Street, South Fork, PA (Cambria County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,428,009.53.

46) Release detected on or about October 18, 1996 of MTBE gasoline from the Country Fair Store #95 facility, 76 North Main Street, Union City, PA (Erie County) resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $223,495.69.

47) Release detected on or about September 1, 1995 of MTBE gasoline from the Country Fair Store #44 facility, 1681 S. Center St. Ext., Grove City, PA (Mercer County) resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $420,696.13.

Case ID: 140602881

48)     Release detected on or about July 25, 2000 of MTBE gasoline from the Country Fair Store #93 facility, 228 West Main Street, Grove City, PA (Mercer County) resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $266,993.88.

49)     Release detected on or about February 19, 2004 of MTBE gasoline from the Country Fair Store #84 facility, 7400 Peach Street in Summit Township, PA (Erie County) resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $621,696.83.

215.    Other releases of MTBE gasoline have occurred from USTIF indemnified sites in Pennsylvania owned or operated by independents not publicly affiliated with particular defendants.  In such instances, the MTBE gasoline that was released was often obtained on the spot market from jobbers.  Jobbers purchase gasoline from various defendants which they would sometimes blend together before sale and delivery to independent stations.  These releases of MTBE gasoline include by example, but are in no way limited to:

1)     Release detected on or about October 12, 1994 of MTBE gasoline from the Brownies Service Station, 113 Main Street, Greenville, PA (Mercer County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,056,054.14;

2)     Release detected on or about December 16, 1994 of MTBE gasoline from the CR's Friendly Market No. 1, 1501 N. 9th Street, Reading, PA (Berks County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,596,573.36;

3)     Release detected on or about October 10, 1994 of MTBE gasoline from Cranberry Township Public Works Facility, 20727 US Route 19, Cranberry, PA (Butler County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $924,717.79;

4)     Release detected on or about March 22, 1995 of MTBE gasoline from Morgan's Service Station, 190 South Tremont Street, Tremont, PA (Schuylkill County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,553,899.11;

5)     Release detected on or about July 19, 1995 of MTBE gasoline from the former Sheetz #17, 130 Belmont Street, Johnstown, PA (Cambria County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,077,728.09;

Case ID: 140602881

6)      Release detected on or about September 14, 1995 of MTBE gasoline from the former Zippy Market, Old Route 15 (Lycoming Creek Road & Stone Drive), Hepburnville, PA (Lycoming County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $784,729.50;

7)      Release detected on or about February 23, 1996 of MTBE gasoline from the Kwik Fill Station No. S-010, 631 West New Castle Road, Zelienople, PA (Butler County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $862,041.64;

8)      Release detected on or about March 20, 1996 of MTBE gasoline from the Squirrel Hill Automotive, 2001 Murray Avenue, Pittsburgh, PA (Allegheny County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $912,494.10;

9)      Release detected on or about September 1996 of MTBE gasoline from the Landhope Farms #5, Route 10, Limestone Road, Oxford, PA (Chester County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $935,569.77;

10)      Release detected on or about November 1, 1996 of MTBE gasoline from the Bressler Service, Inc. station, Route 501 & Old US Route 22, Bethel, PA (Berks County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $855,768.18.

11)      Release detected on or about July 1996 of MTBE gasoline from Sheetz #149, 124 N. Brady Street, Dubois, PA (Clearfield County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $970,019.76.

12)      Release detected on or about March 1997 of MTBE gasoline from Sheehan Motors, Inc., 926 Second Street, Cresson, PA (Cambria County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $924,776.78.

13)      Release detected on or about June 24, 1997 of MTBE gasoline from Dennis Lumber Company, R.R. 1, Box 109, Markleysburg, PA (Fayette County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $798,542.96.

14)      Release detected on or about October 21, 1997 of MTBE gasoline from the Doms Service Station, 2400 Eighth Avenue, Altoona, PA (Blair County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,203,814.95.

15)      Release detected on or about April 21, 1998 of MTBE gasoline from Kauffman Mini Mart, I-78 Exit 8, Shartlesville, PA (Berks County), resulting in investigation and remediation costs paid to date by the Commonwealth in excess of $1,128,493.13.

16)      Release detected on or about December 20, 2005 of MTBE gasoline from Lens Hartsville Garage, 1075 W. Bristol Road, Warminster, PA (Bucks County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,192,770.94.

Case ID: 140602881

17)  Release detected on or about September 23, 1998 of MTBE gasoline from Snow Shoe Auto Truck Stop, Inc., R.R. 1 Box 143, Snow Shoe, PA (Centre County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,437,750.64.

18)  Release detected on or about September 2, 1998 of MTBE gasoline from Pickelner Lock Haven Bulk Plant facility (Lock Haven Division), 204 Second Avenue, Lock Haven, PA (Clinton County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,290,373.25.

19)  Release detected on or about March 16, 1999 of MTBE gasoline from the Top Star Middletown, 2826 E. Harrisburg Pike, Middletown, PA (Dauphin County), resulting in cleanup costs paid to date by the Commonwealth in excess of $2,465,453.25.

20)  Release detected on or about December 16, 1999 of MTBE gasoline from the former Mike's Fancy Service Center, 7947 Boyertown Pike, Boyertown, PA (Berks County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,987,887.51.

21)  Release detected on or about October 13, 2000 of MTBE gasoline from Sanatoga Oil Company Inc. facility, 2177 East High Street, Pottstown, PA (Montgomery County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,211,752.03.

22)  Release detected on or about March 24, 2004 of MTBE gasoline from the former Walt Whitman Truck Stop, 3540 South Lawrence Street, Philadelphia, PA (Philadelphia County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,749,654.29.

23)  Release detected on or about March 31, 2005 of MTBE gasoline from the former 307 Mini Mart, Route 307, Moscow, PA (Lackawanna County), resulting in cleanup costs paid to date by the Commonwealth in excess of $1,360,342.81.

24)  Release detected on or about May 26, 2005 of MTBE gasoline from Lockwoods Inc. station, Route 296 & Cortez Road, South Canaan, PA (Wayne County), resulting in cleanup costs paid to date by the Commonwealth in excess of $2,984,269.63.

216.  Other releases of MTBE gasoline have occurred in Pennsylvania from sites not indemnified by USTIF for which Commonwealth funds have been and will be expended in determining the extent of, monitoring, treating, remediating and otherwise addressing releases of MTBE in the groundwater.

217.  Defendants are responsible for MTBE and MTBE gasoline that was released, directly or indirectly, into the waters of the Commonwealth.

Case ID: 140602881

218.    As a direct and proximate result of defendants' acts and omissions as alleged herein, the Commonwealth has incurred, and will continue to incur, significant costs and expenses in investigating, monitoring, treating, remediating and otherwise addressing releases of MTBE into the waters of the Commonwealth.

219.    Total expenditures by the Commonwealth to date to define the extent of, monitor, treat and remediate gasoline releases from USTIF indemnified sites, a substantial portion of which have involved MTBE gasoline and resulting MTBE contamination of groundwater, exceed $738 million.

220.    Under Pennsylvania law, USTIF, after payment of any cost of corrective action, is "subrogated to all of the rights of recovery of an owner or operator against any person for the cost of remediation." 25 Pa. Code § 977.40(a).

221.    The Commonwealth, through USTIF, is subrogated to the rights of recovery of USTIF's indemnified owners and operators against defendants for the cost of defining the extent of, monitoring, treatment, remediation and any other corrective action in addressing MTBE contamination.

222.    In addition to monies paid or incurred by the Commonwealth under the USTIF program, the Commonwealth through DEP and other agencies have expended funds and staff time in defining the extent of, monitoring, treatment and remediation of MTBE contamination from releases from both USTIF indemnified facilities and other sources.

223.    Defining the extent of, monitoring, treatment and remediation of MTBE contamination was a substantial factor in the costs incurred by the Commonwealth in each investigation and remediation of releases of gasoline containing MTBE.

Case ID: 140602881

224.     As a result of defendants' acts and omissions as alleged herein, the Commonwealth is entitled to recover from the defendants all of the monies and the value of the staff time expended by the Commonwealth to date and into the future in the defining the extent, monitoring, treatment and remediation of MTBE gasoline and MTBE contaminated groundwater.

225.     In addition, because its natural resources are damaged by the continuing presence of MTBE in groundwater at detectable levels, the Commonwealth is entitled to recover from defendants the future costs to define the extent of, monitor, treat and remediate MTBE contaminated groundwater.

### COUNT I
### (Against All Defendants)
### (Strict Product Liability Based On Defective Design)

226.     The Commonwealth incorporates by reference the preceding paragraphs as though set forth in full herein.

227.     Defendants designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, marketed and/or otherwise supplied (directly or indirectly) MTBE or MTBE gasoline that was delivered into Pennsylvania or into areas outside Pennsylvania affecting the waters of the Commonwealth.

228.     Defendants represented and claimed that MTBE gasoline could be handled and used in the same manner as gasoline not containing MTBE, and/or otherwise did not require any different or special handling or precautions.

229.     Defendants knew that MTBE and/or MTBE gasoline were going to be handled, purchased and used without inspection for defects and/or knew that downstream handlers and intended users and consumers did not have the wherewithal to inspect or test for defects.

70

230.    MTBE and/or MTBE gasoline are defective and unreasonably dangerous products because, among other things:

a)    MTBE is released more readily from gasoline transportation, storage and delivery systems or facilities than are the other constituents of gasoline and other available and viable alternative gasoline additives that can be substituted for MTBE;

b)    MTBE, when used in its intended manner, causes extensive groundwater contamination that is difficult, time consuming and expensive to respond to and remediate;

c)    even at extremely low concentrations, MTBE renders groundwater putrid, foul, and unfit for use by humans;

d)    MTBE poses significant threats to the public health, comfort safety and welfare and the environment;

e)    upon information and belief, despite prior knowledge of potential carcinogenic or other health effects, defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the potential human health effects of MTBE;

f)    at all times relevant to this action, feasible alternatives to MTBE were available to the defendants which could have achieved required efficiencies, octane levels and/or oxygenation and would have eliminated the unreasonable dangers and hazards posed by gasoline containing MTBE;

g)    commercial grade MTBE is defectively manufactured when it contains and/or degrades into unnecessary but environmentally harmful impurities such as TBA; and

h)    any utility allegedly provided by the use of MTBE as a gasoline additive is

71

greatly outweighed by the risks and dangers associated with MTBE.

231.    MTBE is not safe for its intended use by the intended users or consumers of MTBE.

232.    MTBE is not safe for its intended use in light of the availability of reasonably safer and available alternatives.

233.    Defendants at all times knew of the defective and unreasonably dangerous nature of MTBE and MTBE gasoline, yet still manufactured, sold and/or distributed the products without any regard for their defective characteristics.

234.    At all times relevant to this action, MTBE and/or MTBE gasoline was unreasonably dangerous for sale to or use by the intended user or consumer, and/or the great risk of harm to public welfare and the environment posed by MTBE and/or MTBE gasoline outweighed the cost to defendants of reducing or eliminating such risk.  Defendants were able to convert to a different safer formulation without MTBE, and still profit from their gasoline sales.

235.    At all times relevant to this action, the distribution, storage, and/or use of MTBE and/or MTBE gasoline and the risks and dangers associated therewith including the risk of harm to public health and welfare and the environment outweighed any limited utility provided by MTBE and/or gasoline containing MTBE.

236.    At all times relevant to this action, MTBE and MTBE gasoline were used by the intended users and/or consumers of MTBE and MTBE gasoline without substantial change in their condition, and as a proximate result of the defects previously described, MTBE and MTBE gasoline caused the injuries and damages set forth in this Complaint.

237.    As a direct and proximate result of defendants' acts and omissions as alleged herein, the Commonwealth has incurred and suffered and will continue to incur and suffer

72

substantial costs and damages as aforesaid for which defendants are strictly, jointly and severally liable.

WHEREFORE, the Commonwealth respectfully requests that this Court:

a.      Enter judgment against defendants, jointly and severally, in an amount in excess of $50,000 for all costs to define the extent of, remediate, remove, restore, treat, monitor and otherwise respond to MTBE in the waters of the Commonwealth so that such waters are restored to their original condition, and for all damages to compensate the Commonwealth for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the Commonwealth, including the costs of:

1)      past and future testing of all affected or potentially affected groundwater for the presence of MTBE, including in both public and private drinking water wells ; and

2)      past and future treatment and remediation of all groundwater containing detectable levels of MTBE until restored to non-detectable levels, including in both public and private drinking water wells;

b.      Enter judgment against defendants, jointly and severally, for all reasonable costs incurred related to the investigation, response, remediation, removal, restoration, treatment and monitoring, directly or indirectly resulting from the contamination of the waters of the Commonwealth with MTBE;

c.      Enter judgment against defendants, jointly and severally, for all damages in an amount at least equal to the full cost of restoring the waters of the Commonwealth to their original condition prior to the contamination of such waters with MTBE;

73

d       Enter judgment against defendants, jointly and severally, for all compensatory damages for the lost interim or permanent value of the waters of the Commonwealth as a result of the contamination of such waters with MTBE;

e.      Enter judgment against defendants, jointly and severally, for all other damages sustained by the Commonwealth as a direct and proximate result of defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the Commonwealth;

f.      Enter an order against defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the Commonwealth;

g.      Enter an order assessing defendants for punitive damages in an amount to be determined by this Court;

h.      Award the Commonwealth costs incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

i.      Award the Commonwealth such other relief as this Court deems appropriate.

**COUNT II**
**(Against All Defendants)**
**(Strict Liability for Failure to Warn)**

238.    The Commonwealth incorporates by reference the preceding paragraphs as though set forth in full herein.

239.    MTBE and MTBE gasoline were designed, manufactured, formulated, marketed, promoted, supplied and/or sold in a defective condition that was unreasonably dangerous to intended users or consumers.

240.    Despite their knowledge that ground and surface water contamination with MTBE was the inevitable consequence of their conduct as alleged herein, defendants failed to provide

74

adequate warnings or instructions, or they provided inadequate warnings or instructions, on the proper and safe use of MTBE and gasoline containing MTBE.  Nor did defendants take any other precautionary measures to prevent or mitigate contamination of the waters of the Commonwealth.

241.    Defendants did not adequately warn or instruct intended users or consumers as to the dangers of MTBE.

242.    Defendants' failure to provide the required warnings or instructions, or their provision of inadequate warnings or instructions, on the use of or dangers presented by MTBE and/or MTBE gasoline rendered these products defective and unreasonably dangerous.  The absence of required warnings or instructions, or defendants' provision of inadequate warnings or instructions, for the safe use of MTBE and/or MTBE gasoline were a direct and proximate cause of the injuries to the waters of the Commonwealth as alleged herein.

243.    Had the downstream handlers and intended users and consumers of MTBE and/or MTBE gasoline received adequate warnings or instructions concerning the safe use of MTBE and/or gasoline containing MTBE, they would have, or are substantially likely to have, avoided the risks or dangers attendant to the use of MTBE or gasoline containing MTBE, including avoiding altogether MTBE or MTBE gasoline.

244.    As a direct and proximate result of defendants' acts and omissions as alleged herein, the Commonwealth has incurred and suffered and will continue to incur and suffer substantial costs and damages as aforesaid for which defendants are strictly, jointly and severally liable.

WHEREFORE, the Commonwealth respectfully requests that this Court:

75

a.       Enter judgment against defendants, jointly and severally, in an amount in excess of $50,000 for all costs to define the extent of, remediate, restore, treat, monitor and otherwise respond to MTBE in the waters of the Commonwealth so that such waters are restored to their original condition, and for all damages to compensate the Commonwealth for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the Commonwealth, including the costs of:

1)       past and future testing of all affected or potentially affected groundwater for the presence of MTBE, including in both public and private drinking water wells; and

2)       past and future treatment and remediation of all groundwater containing detectable levels of MTBE until restored to non-detectable levels, including in both public and private drinking water wells;

b.       Enter judgment against defendants, jointly and severally, for all reasonable costs incurred related to the investigation, response, remediation, removal, restoration, treatment and monitoring, directly or indirectly resulting from the contamination of the waters of the Commonwealth with MTBE;

c.       Enter judgment against defendants, jointly and severally, for all damages in an amount at least equal to the full cost of restoring the waters of the Commonwealth to their original condition prior to the contamination of such waters with MTBE;

d.       Enter judgment against defendants, jointly and severally, for all compensatory damages for the lost interim or permanent value of the waters of the Commonwealth as a result of the contamination of such waters with MTBE;

e.      Enter judgment against defendants, jointly and severally, for all other damages sustained by the Commonwealth as a direct and proximate result of defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the Commonwealth;

f.      Enter an order against defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the Commonwealth;

g.      Enter judgment against defendants for punitive damages in an amount to be determined by this Court;

h.      Award the Commonwealth costs incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

i.      Award the Commonwealth such other relief as this Court deems appropriate.

### COUNT III
### (Against All Defendants)
### (Public Nuisance)

245.    The Commonwealth incorporates by reference the preceding paragraphs as though set forth in full herein.

246.    Defendants' negligent, reckless and intentional activities which have resulted in the contamination of the waters of the Commonwealth, a public resource, as alleged herein, and created a significant and unreasonable interference with the general public's right to clean, unadulterated water constitute a public nuisance.

247.    Defendants' actions and omissions in causing MTBE to enter and pollute the waters of the Commonwealth violate, *inter alia*, the Pennsylvania Storage Tank and Spill Prevention Act, 35 P.S. §§ 6021.101 *et seq.* and Pennsylvania's Clean Streams Law, 35 P.S. §§ 691.1 et seq., and constitute a public nuisance *per se* under Pennsylvania law.

Case ID: 140602881

248. The public nuisance caused by defendants has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the Commonwealth's interests in the waters of the Commonwealth, as well as the Commonwealth's ability to protect, conserve and manage the waters of the Commonwealth, a public resource.

249. The public nuisance caused by defendants is of a continuing nature and has produced a long-lasting effect upon the waters of the Commonwealth, as defendants knew or had reason to know at all times material hereto.

250. Defendants intentionally and fraudulently promoted MTBE for use as an additive in gasoline despite their knowledge it had of latent and far-reaching adverse environmental consequences and refined, compounded, formulated, marketed, distributed and/or otherwise supplied and controlled MTBE gasoline in Pennsylvania (and areas outside Pennsylvania affecting the waters of the Commonwealth) when, at all times material hereto, defendants knew, or reasonably should have known, that (i) gasoline containing MTBE would be placed into leaking gasoline storage and delivery systems; and (ii) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate groundwater, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

251. Based on their conduct as aforesaid, defendants have, at all times relevant to this action, caused, maintained, substantially participated in and/or assisted in the creation of such public nuisance and is a substantial contributor to such public nuisance.

252. As a direct and proximate result of defendants' acts and omissions as alleged herein, the Commonwealth has incurred and suffered and will continue to incur and suffer substantial costs and damages as aforesaid for which defendants are jointly and severally liable.

Case ID: 140602881

WHEREFORE, the Commonwealth respectfully requests that this Court:

a.      Enter judgment against defendants, jointly and severally, in an amount in excess of $50,000 for all costs to define the extent of, remediate, remove, restore, treat, monitor and otherwise respond to MTBE in the waters of the Commonwealth so that such waters are restored to their original condition, and for all damages to compensate the Commonwealth for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the Commonwealth, including the costs of:

1)      past and future testing of all affected or potentially affected groundwater for the presence of MTBE, including in both public and private drinking water wells; and

2)      past and future treatment and remediation of all groundwater containing detectable levels of MTBE until restored to non-detectable levels, including in both public and private drinking water wells;

b.      Enter judgment against defendants, jointly and severally, for all reasonable costs incurred related to the investigation, response, remediation, removal, restoration, treatment and monitoring, directly or indirectly resulting from the contamination of the waters of the Commonwealth with MTBE;

c.      Enter judgment against defendants, jointly and severally, for all damages in an amount at least equal to the full cost of restoring the waters of the Commonwealth to their original condition prior to the contamination of such waters with MTBE;

d      Enter judgment against defendants, jointly and severally, for all compensatory damages for the lost interim or permanent value of the waters of the Commonwealth as a result of the contamination of such waters with MTBE;

Case ID: 140602881

e.     Enter judgment against defendants, jointly and severally, for all other damages sustained by the Commonwealth as a direct and proximate result of defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the Commonwealth;

f.     Enter an order against defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the Commonwealth;

g.     Enter an order assessing defendants for punitive damages in an amount to be determined by this Court;

h.     Award the Commonwealth costs incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

i.     Award the Commonwealth such other relief as this Court deems appropriate.

## COUNT IV
### (Against all Defendants)
### (Negligence)

253.   The Commonwealth incorporates by reference the preceding paragraphs as though set forth in full herein.

254.   Defendants owed a duty to the Commonwealth to exercise due care in the design, manufacture, formulation, handling, control, disposal, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

255.   Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or failed to control), tested (or failed to test), marketed, sold and otherwise distributed MTBE and MTBE gasoline that they breached their duties and directly and proximately caused MTBE to contaminate and threaten the waters of the Commonwealth, resulting in the damages alleged in this Complaint.

80

256.     Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport characteristics of MTBE, and/or the likelihood that use of MTBE as a component of gasoline would pollute public water supplies, render drinking water unusable and unsafe, and threaten public health and welfare and the environment.

257.     The MTBE manufacturer defendants manufactured, promoted and/or otherwise supplied MTBE to the refiner defendants when they knew that:

a.     the refiners would in turn blend the MTBE into gasoline;

b.     such MTBE gasoline would then be placed into gasoline storage and delivery systems, including those in Pennsylvania, with a known propensity and/or potential to leak; and

c.     when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate waters of the Commonwealth, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

258.     The refiner and other defendants refined, marketed and/or otherwise supplied MTBE gasoline that was delivered, stored and sold in Pennsylvania and/or in areas affecting waters of the Commonwealth, when they knew, or reasonably should have known, that:

a.     such gasoline would be placed into gasoline storage and delivery systems with a known propensity and/or potential to leak;

b.     MTBE would be released even more readily than the constituents of gasoline not containing MTBE from gasoline storage and delivery systems; and

c.     when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate waters of the Commonwealth,

81

including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

259.    Defendants manufactured, refined, marketed, promoted and/or otherwise supplied MTBE and/or MTBE gasoline to downstream handlers and intended users and consumers when they knew, or reasonably should have known, that MTBE would be released into the environment from commercial and consumer uses and sources in Pennsylvania other than gasoline storage and delivery systems; and contaminate the waters of the Commonwealth.

260.    Despite their knowledge that water contamination with MTBE was a probable consequence of their conduct and omissions as alleged herein, defendants failed to provide any warnings or special instructions, take any other precautionary measures to prevent or mitigate such contamination, or undertake and perform appropriate and necessary response or remediation activities.

261.    In light of the facts alleged herein, defendants breached their duty to use due care in the design, manufacture, formulation, handling, control, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

262.    As a direct and proximate result of defendants' acts and omissions as alleged herein, the Commonwealth has incurred and suffered and will continue to incur and suffer substantial costs and damages as aforesaid for which defendants are jointly and severally liable.

WHEREFORE, the Commonwealth respectfully requests that this Court:

a.    Enter judgment against defendants, jointly and severally, in an amount in excess of $50,000 for all costs to define the extent of, remediate, remove, restore, treat, monitor and otherwise respond to MTBE in the waters of the Commonwealth so that such waters are restored to their original condition, and for all damages to compensate the Commonwealth for the lost

Case ID: 140602881

interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the Commonwealth, including the costs of:

> 1)   past and future testing of all affected or potentially affected groundwater for the presence of MTBE, including in both public and private drinking water wells; and

> 2)   past and future treatment and remediation of all groundwater containing detectable levels of MTBE until restored to non-detectable levels, including in both public and private drinking water wells;

b.   Enter judgment against defendants, jointly and severally, for all reasonable costs incurred related to the investigation, response, remediation, removal, restoration, treatment and monitoring, directly or indirectly resulting from the contamination of the waters of the Commonwealth with MTBE;

c.   Enter judgment against defendants, jointly and severally, for all damages in an amount at least equal to the full cost of restoring the waters of the Commonwealth to their original condition prior to the contamination of such waters with MTBE;

d   Enter judgment against defendants, jointly and severally, for all compensatory damages for the lost interim or permanent value of the waters of the Commonwealth as a result of the contamination of such waters with MTBE;

e.   Enter judgment against defendants, jointly and severally, for all other damages sustained by the Commonwealth as a direct and proximate result of defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the Commonwealth;

Case ID: 140602881

f.      Enter an order against defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the Commonwealth;

g.      Enter an order assessing defendants for punitive damages in an amount to be determined by this Court;

h.      Award the Commonwealth costs incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

i.      Award the Commonwealth such other relief as this Court deems appropriate.

**COUNT V**
**(Against all Defendants)**
**(Trespass)**

263.    The Commonwealth incorporates by reference the preceding paragraphs as though set forth at length herein.

264.    The Commonwealth is the possessor and owner of rights and interests in the waters of the Commonwealth, a public natural resource, which the Commonwealth also holds in trust for the benefit of its citizens.  These rights and interests include, but are not limited to, the Commonwealth's possession and control over waters of the Commonwealth and its legal responsibilities to protect the quality of such waters from contamination and pollution, its constitutional duties as trustee of public natural resources to conserve and maintain the waters for the benefit of all the people, and its *parens patriae* prerogatives, duties and rights to prosecute and recover for trespasses to waters of the Commonwealth

265.    By their tortious conduct as alleged herein, defendants caused MTBE to enter, invade, intrude upon and injure the waters of the Commonwealth, trespassing upon the Commonwealth's interests and rights to such waters.

84

266.     Based on their knowledge of the properties and manner of distribution and storage of MTBE and MTBE gasoline as alleged herein, defendants were or should have been aware that as a result of their conduct MTBE contamination of Pennsylvania's groundwater as alleged was inevitable or substantially certain to result.

267.     The trespass upon the waters of the Commonwealth is a continuing trespass.

268.     The Commonwealth has not consented to the trespass alleged herein.

269.     As a direct and proximate result of defendants' acts and omissions as alleged herein, the Commonwealth has incurred and suffered and will continue to incur and suffer substantial costs and damages as aforesaid for which defendants are jointly and severally liable.

WHEREFORE, the Commonwealth respectfully requests that this Court:

a.     Enter judgment against defendants, jointly and severally, in an amount in excess of $50,000 for all costs to define the extent of, remediate, remove, restore, treat, monitor and otherwise respond to MTBE in the waters of the Commonwealth so that such waters are restored to their original condition, and for all damages to compensate the Commonwealth for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the Commonwealth, including the costs of:

1)     past and future testing of all affected or potentially affected groundwater for the presence of MTBE, including in both public and private drinking water wells; and

2)     past and future treatment and remediation of all groundwater containing detectable levels of MTBE until restored to non-detectable levels, including in both public and private drinking water wells;

85

Case ID: 140602881

b.      Enter judgment against defendants, jointly and severally, for all reasonable costs incurred related to the investigation, response, remediation, removal, restoration, treatment and monitoring, directly or indirectly resulting from the contamination of the waters of the Commonwealth with MTBE;

c.      Enter judgment against defendants, jointly and severally, for all damages in an amount at least equal to the full cost of restoring the waters of the Commonwealth to their original condition prior to the contamination of such waters with MTBE;

d      Enter judgment against defendants, jointly and severally, for all compensatory damages for the lost interim or permanent value of the waters of the Commonwealth as a result of the contamination of such waters with MTBE;

e.      Enter judgment against defendants, jointly and severally, for all other damages sustained by the Commonwealth as a direct and proximate result of defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the Commonwealth;

f.      Enter an order against defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the Commonwealth;

g.      Enter an order assessing defendants for punitive damages in an amount to be determined by this Court;

h.      Award the Commonwealth costs incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

i.      Award the Commonwealth such other relief as this Court deems appropriate.

Case ID: 140602881

**COUNT VI**
**(Against All Defendants)**
**(Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law)**

270.     The Commonwealth incorporates by reference the preceding paragraphs as

though set forth in full herein.

271.     At all relevant times, there was in effect the Pennsylvania Unfair Trade Practices

and Consumer Protection Law, 73 P. S. § 201-1 et seq. ("UTPCPL").

272.     Section 3 of the UTPCPL, 73 P. S. § 201-3, provides, in pertinent part:

Unfair methods of competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce as defined by sub clauses (i) through (xxi) of clause
(4) of section 2 of this act ... are hereby declared unlawful.

273.     Section 2 of the UTPCPL, 73 P. S. § 201-2, provides, in pertinent part:

"UNFAIR METHODS OF COMPETITION" and "UNFAIR OR DECEPTIVE ACTS
OR PRACTICES" mean any one or more of the following:

\* \* \*

(v) Representing that goods or services have sponsorship, approval, characteristics,
ingredients, uses, benefits or quantities that they do not have or that person has a sponsorship,
approval, status, affiliation or connection that he does not have;

\* \* \*

(vii) Representing that goods or services are of a particular standard, quality or grade or
that goods are of a particular style or model, if they are of another;

\* \* \*

(ix) Advertising goods or services with intent not to sell them as advertised;

\* \* \*

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of
confusion or of misunderstanding.

274.     Defendants' fraudulent and deceptive actions and practices as aforesaid in

connection with the marketing, sale and distribution of MTBE and MTBE gasoline violated and

continue to violate the UTPCPL for one or more of the following reasons:

87

a.    Defendants disseminated, marketed, advertised and otherwise distributed information to gasoline refiners, distributors, jobbers, retailers and consumers that MTBE was a safe, suitable and effective gasoline additive when in fact its environmental risks and hazards outweighed any benefits as a gasoline additive;

b.    Defendants use of MTBE as a gasoline additive did not and does not have the characteristics, benefits or qualities it was represented to possess in that when released into the environment it caused far reaching damage to air, property, water supplies and other natural resources of the Commonwealth that has necessitated and will necessitate longer, more difficult and more costly remedial actions;

275.    Defendants' omissions, misrepresentations, and improper practices relating to the marketing and promotion of MTBE as a gasoline additive had and continue to have the tendency, capacity and likelihood to deceive the public, including gasoline refiners, distributors, jobbers, retailers and consumers purchasing, storing and distributing same.

276.    Defendants' omissions, misrepresentations, and improper practices relating to the marketing and promotions of MTBE as a gasoline additive unfairly and improperly placed available alternative additives, such as ethanol, at a competitive disadvantage, thereby negatively impacting the public and commerce of Pennsylvania.

277.    The Pennsylvania Attorney General has reason to believe that defendants omissions, misrepresentations, and practices relating to the marketing and promotion of MTBE as a gasoline additive violated and will continue to violate the UTPCPL.

278.    Unless restrained, defendants will or may continue to engage in methods, acts or practices that violate the UTPCPL and are contrary to the public's interest, thereby necessitating a permanent injunction to prevent and restrain such misconduct by defendants.

Case ID: 140602881

279.     Pursuant to § 4 of the UTPCPL, 73 P.S. § 201-4, the Attorney General believes it to be in the public interest to bring this action against defendants to restrain the continued violation of the UTPCPL.

280.     Pursuant to § 4.1 of the UTPCPL, 73 P.S. § 201-4.1,  and  due to their respective violations of the UTPCPL, defendants should be furthered ordered and directed by the Court to restore to the Commonwealth and other persons in interest any moneys or property, real or personal, lost as a result of defendants' violations of the UTPCPL.

281.     Defendants willfully used and continue to use methods, acts and practices relating to MTBE and MTBE gasoline that violate the UTPCPL and accordingly under §8 of the UTPCPL, 73 P.S. §2-201-8, assessment and recovery of civil penalties on behalf of the Commonwealth is warranted and should be ordered against each defendant in a sum not exceeding one thousand dollars ($1000.00) per violation, which civil penalty is in addition to any other relief awarded the Commonwealth.

WHEREFORE, the Commonwealth respectfully requests that this Court:

a.     Enter declaratory judgment against defendants determining and declaring that each defendant's methods, acts and practices relating to the sale, marketing and distribution of MTBE or MTBE gasoline violated the UTPCPL, 73 P.S. § 201-1 *et seq*.;

b.     Enter a permanent injunction order restraining defendants from further violating the UTPCPL, 73 P.S. § 201-1 *et seq*.;

c.     Enter an order under §4.1 of the UTPCPL, 73 P.S. § 201-4.1, requiring defendants to restore to the Commonwealth and other persons in interest any moneys or property, real or personal,  defendants acquired as a result of defendants' violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

Case ID: 140602881

d.    Enter an order awarding to the Commonwealth a civil penalty under § 8 of the

UTPCPL, 73 P.S. § 201-8, against each defendant in a sum not exceeding one thousand dollars

($1000.00) per violation;

e.    Award the Commonwealth costs and reasonable attorneys' fees incurred in

prosecuting this action, together with prejudgment interest, to the full extent permitted by law;

and

f.    Award the Commonwealth such other relief as this Court deems appropriate.

**PENNSYLVANIA OFFICE OF ATTORNEY GENERAL**

By: /s/ James A. Donahue, III
      James A Donahue, III, Esquire
      Executive Deputy Attorney General

Strawberry Square, 14th Floor
Harrisburg, Pennsylvania  17120
(717) 705-0418

**BERGER & MONTAGUE, P.C.**

By: /s/ Daniel Berger
      Daniel Berger, Esquire
      Tyler E. Wren, Esquire

Special Counsel to the
Commonwealth of Pennsylvania
1622 Locust Street
Philadelphia, Pennsylvania 19103
(215) 875-3000

**GOVERNOR'S OFFICE OF GENERAL COUNSEL**

By: /s/Linda C. Barrett
      Linda C. Barrett, Esquire
      Deputy General Counsel

333 Market Street, 17th Floor
Harrisburg, Pennsylvania  17101
(717) 787-9347

**COHEN, PLACITELLA & ROTH, P.C.**

By: /s/ Stewart L. Cohen
      Stewart L. Cohen, Esquire
      Robert L. Pratter, Esquire
      Michael Coren, Esquire.

Special Counsel to the
Commonwealth of Pennsylvania
Two Commerce Square
Suite 2900, 2001 Market St
.Philadelphia, Pennsylvania  19103
(215) 567-3500

Case ID: 140602881

**Of Counsel:**

**MILLER & AXLINE, P.C.**

By: /s/ Duane Miller
     Duane Miller, Esquire
     Michael Axline, Esquire

Special Counsel to the
Commonwealth of Pennsylvania
1050 Fulton Avenue, Suite 100
Sacramento, California  95825-4225
(916) 488-6688

Admission *pro hac vice* to be made.

91

**VERIFICATION**

I, Vincent Brisini, Deputy Secretary for the Office of Waste, Air, Radiation and

Remediation at the Pennsylvania Department of Environmental Protection, on behalf of Plaintiff

Commonwealth of Pennsylvania, hereby verify that the statements made in the foregoing

Complaint are true and correct to the best of my knowledge, information and belief, and that I

understand that the statements herein are subject to the penalties of 18 Pa. C.S. §4904 relating to

unsworn falsification to authorities.

_____
Vincent Brisini

# EXHIBIT 2