IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE COMMONWEALTH OF PENNSYLVANIA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EXXON MOBIL CORPORATION, et al. | : | NO. 14-4327 |

MEMORANDUM

Bartle, J. September 1, 2026

This is a complex action brought by the Commonwealth of Pennsylvania against a number of oil companies for alleged contamination of groundwater caused by releases of gasoline containing methyl tertiary butyl ether ("MTBE") in Pennsylvania. Currently at issue are plaintiff's negligence claims against all defendants.

Not surprisingly, the parties have engaged a plethora of experts. Before the court is one of a number of motions of defendants[1] to exclude the testimony and opinions of plaintiff's experts. This one seeks to exclude the testimony and opinion of David Andress.

1 These defendants are BP Products North America, Inc.; Chevron U.S.A., Inc.; Cumberland Farms, Inc.; Pike Fuels Limited Partnership (f/k/a Gulf Oil Limited Partnership); ExxonMobil Oil Corporation; Guttman Realty Company; Guttman Oil Company; Hess Corporation; Shell Oil Company; Motiva Enterprises, LLC; and United Refining Company.

I

Mr. Andress is being presented as a substitute for plaintiff's expert Robert Reynolds who had provided a written opinion but who later died. In essence, Mr. Reynolds opined that ethanol was a technically and economically feasible alternative to MTBE and met the oxygenate requirements of the Clean Air Act 1990 amendments. He further opined that the ethanol industry could have and would have expanded production to meet the demand had gasoline refineries turned to ethanol and away from MTBE. Mr. Andress, who was deposed on April 24, 2026, adopts Mr. Reynolds' report verbatim.

II

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The court is charged as a gatekeeper. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 597 (1993). Pursuant to Rule 104(a), this court must decide preliminary questions about whether the expert meets the requirements of Rule 702. It must determine if: (1) the expert is qualified; (2) the proposed testimony is reliable, that is supported by scientific methods and procedures; and (3) the proposed testimony fits the case, that is "sufficiently tied to the facts of the case." Cohen v. Cohen, 125 F.4th 454, 460 (3d Cir. 2025). It is not the role of the court to decide whether the expert is correct in his or her opinions. Bourjaily v. United States, 483 U.S. 171, 175 (1987); In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994).

III

Defendants first argue that Mr. Andress' verbatim adoption of Mr. Reynolds' report is not reliable. The law permits a party to substitute a new expert in place of one who has provided an opinion and thereafter died or is otherwise unavailable. See, e.g., Lefta Assocs., Inc. v. Hurley, No. 1:09-CV-2487, 2013 WL 12239510, at *1-2 (M.D. Pa. Feb. 13, 2013); Newborn Bros. Co. v. Albion Eng'g Co., No. 112CV02999NLHAMD, 2023 WL 8714264, at *1 (D.N.J. Dec. 18, 2023). Nonetheless, the substitute expert's opinion must be substantively similar to the original expert's opinion and

limited to the same subject matter. See, e.g., Sikkelee v. Precision Airmotive Corp., No. 4:07-CV-00886, 2021 WL 392101, at *5 (M.D. Pa. Feb. 4, 2021); Lefta Assocs., Inc., 2013 WL 12239510, at *2; Newborn Bros. Co., 2023 WL 8714264, at *2. This is to prevent prejudice to the non-proffering party. See Sikkelee, 2021 WL 392101, at *5. In this case Mr. Andress adopted the opinion of Mr. Reynolds without change.

Defendants seem to argue that mere parroting of the original expert's opinion is itself a bar to the substitute expert's testimony. Why is it permissible to have a similar opinion but not an identical one? It is still limited to the same subject matter, and defendants are not prejudiced by the proffering of an opinion that was contained in Mr. Reynolds' original report. Id. It may very well be that the new expert agrees completely with the prior expert. A bright line rule against a word-for-word adoption of the prior expert's report is not justified. Instead, the court must determine whether the new expert meets the requirements under Rule 702 of the Federal Rules of Evidence, regardless of whether his or her opinion is only similar to the original expert's opinion or adopts verbatim the original opinion.

Defendants also argue that Mr. Andress' report and opinion are unreliable because he did not review the references cited by Mr. Reynolds in his original report and had no

knowledge of facts underlying the report such as Mr. Reynolds' pricing assumptions related to the additional costs incurred by using ethanol as compared to MTBE. Generally, an expert is allowed to rely on "materials used by other experts in developing their own opinions," but he must "assess the validity of the opinions of the experts he relied upon" for his methodology to be sound. See In re TMI Litig., 193 F.3d 613, 716 (3d Cir. 1999), amended by, 199 F.3d 158 (3d Cir. 2000); Leese v. Lockheed Martin Corp., 6 F. Supp. 3d 546, 553 (D.N.J. 2014). An expert is not required to base his opinions on "independent data collection or field research; rather, the question is whether an expert's data is of a type reasonably relied on by experts in the field . . . and whether there are good grounds to rely on this data to draw the conclusion reached by the expert." Jaasma v. Shell Oil Co., 412 F.3d 501, 514 (3d Cir. 2005) (citation modified). He may use a "mix of objective data and subjective analysis from another expert to . . . create an admissible report, and the testifying expert's knowledge regarding the underlying facts goes to the weight . . . rather than its admissibility." Leese, 6 F. Supp. 3d at 553 (citation modified). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

In his deposition, Mr. Andress testified that before adopting Mr. Reynolds' report as his own, he spent thirty-six hours reviewing it. Mr. Andress noted that while he did not "pay attention to exactly what [Mr. Reynolds'] references were. I did my own literature searches and things like that. . . . [M]aybe one or two things, when I couldn't find things, I looked at what he referenced or something like that." Mr. Andress conducted his own literature review to verify the validity of Mr. Reynolds' opinions. In re TMI Litig., 193 F.3d at 716. The opinions originally proffered by Mr. Reynolds, including on the additional costs of using ethanol rather than MTBE, appear to be based on objective data and Mr. Reynolds' subjective analysis. It is the type of information an expert may use for his report. See Leese, 6 F. Supp. 3d at 553. That Mr. Andress did not verify every single reference relied upon by Mr. Reynolds ultimately goes to the weight of Mr. Andress' testimony. Defendants may cross-examine Mr. Andress on any errors or discrepancies present in his report and present evidence contrary to Mr. Andress' opinions at trial but this alone does not make Mr. Andress' opinions inadmissible.

IV

Next, defendants argue that Mr. Andress is not qualified to testify as an expert on the subjects covered in the report of Mr. Reynolds.

Our Court of Appeals, in the oft-cited case of In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 741 (3d Cir. 1994), has declared that "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts. We have eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." This liberality has been reiterated in subsequent decisions. See, e.g., Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008); Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 780-83 (3d Cir. 1996).

Mr. Andress received multiple degrees in mathematics and completed courses in operations research, economics, and computer science. He spent approximately four years working at consulting companies during which he focused on issues related to the nuclear energy industry, and his focus on nuclear energy continued during his work as an independent consultant through the late 2010s. In the mid to late 1990s, Mr. Andress began working on consulting projects related to ethanol fuel. He has investigated issues and written reports on fuel oxygenates, gasoline formulations, and the "economic ramifications of the increasing ethanol use in an MTBE-restricted environment." While some of these papers were published, the ones pertaining to MTBE were "internal papers for policy analysis with the government" prepared by Mr. Andress in the late 1990s and early

2000s. He has never been employed by a company in the ethanol or petroleum industries.

Defendants argue that this experience does not qualify Mr. Andress as an expert on the ethanol industry, the petroleum industry, and the fuel transportation sector. They note that his relevant experience related to ethanol "post-dates the critical timeframe covered in his report—i.e., the early 1990s when refiners needed to choose between ethanol and MTBE," that his experience with gasoline refining and MTBE "is essentially non-existent," and that his experience consulting in the energy sector primarily focused on nuclear energy.

That Mr. Andress' focus was on nuclear energy does not negate his consulting experience related to the ethanol and petroleum sectors. Additionally, plaintiff disagrees with defendants that the early 1990s alone were the relevant time frame in this matter. They mention that the relevant time period is "when oxygenated fuel was required in parts of Pennsylvania." The operative Second Amended Complaint contains numerous mentions of releases of MTBE gasoline in Pennsylvania in the late 1990s and 2000s, and the expert report opines on pricing and market responses through the 2000s. Defendants do not provide any reason for limiting the relevant time period to the early 1990s and do not dispute that Mr. Andress analyzed issues pertaining to MTBE as part of his work for the government

in the 1990s and early 2000s. The court finds that Mr. Andress' general qualifications are sufficient to qualify him as an expert in the ethanol industry and MTBE related requirements of the Clean Air Act 1990 amendments. See In re Paoli R.R. Yard PCB Litig., 35 F.3d at 741.

Defendants also specify several topics on which in their view Mr. Andress does not have expertise to opine. Mr. Andress stated during his deposition that he was not an expert on the pricing assumptions underlying the additional costs incurred by using ethanol as compared to MTBE and relied entirely on Mr. Reynolds' original report to opine that the ethanol industry could have expanded supply to meet demand. Defendants also argue that he is not qualified to opine on the feasibility and logistics of distributing gasoline containing MTBE and ethanol in Pennsylvania because he is not knowledgeable about and did not analyze Pennsylvania-specific issues.

Defendants point to Mr. Andress' deposition, in which he testified that he was "not knowledgeable" about Pennsylvania-specific issues, did not conduct a Pennsylvania-specific analysis; and that he relied on Mr. Reynolds' experience in opining on Pennsylvania's gasoline supply infrastructure and the changes required to allow that infrastructure to use ethanol. But lack of state-specific experience does not automatically disqualify an expert from giving his opinion on a particular

location. See, e.g., United States v. Ameren Mo., No. 4:11 CV 77 RWS, 2019 WL 1384631, at *2 (E.D. Mo. Mar. 27, 2019).

Mr. Andress testified at his deposition that while he did not look at Pennsylvania-specific issues, he "looked at [Mr. Reynolds'] report more from a national level" and that while he did not conduct any independent analysis, he relied on reports developed by Mr. Reynolds. And as noted above, Mr. Andress may rely on Mr. Reynolds' analysis and reports containing both facts and Mr. Reynolds' subjective analyses in informing his own opinion. See Leese, 6 F. Supp. 3d at 553. Furthermore, Mr. Andress has experience researching issues related to substituting ethanol for MTBE. Mr. Andress' resume references his "written papers on the economic ramifications of the increasing ethanol use in an MTBE-restricted environment."[2] His understanding of facts relevant to and opinions on Pennsylvania-specific matters and the feasibility of the substitution of ethanol for MTBE are ultimately potential topics for cross-examination and contrary evidence.

Accordingly, the motion of defendant to exclude the expert testimony and opinion of David Andress will be denied.

2 This resume was not provided to the court but was discussed and read from during Mr. Andress' deposition.